JEFF M. MEYERSON (Texas Bar No. 00788051)
CHRIS G. CAGLE (Texas Bar No. 24048905)
MARK R. MCLEAN (Texas Bar No. 24062882)
MEYERSON CAGLE, P.C.
2700 Via Fortuna Drive, Suite 145
Austin, Texas 78746
Telephone: (512) 330-9001
Facsimile: (512) 330-9005
Email:  markm@meyersonfirm.com
*Attorneys Pro Hac Vice for Plaintiffs*

RON KERL (ISB 1768)
COOPER & LARSEN
151 North 3rd Avenue, Suite 210
Pocatello, Idaho  83201
Telephone: (208) 235-1145
Facsimile:  (208) 235-1182
ron@cooperlarson.com
*Local Counsel*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO (EASTERN DIVISION)

| | |
|---|---|
| SCOTT READ; BRUCE NORTON; SUSAN NORTON; BARBARA JEAN DUNBAR; EDWARD CALL; PATRICIA CALL; PAUL AND KIMBERLY MAPLES; MICHAEL REGENNITTER; CYNTHIA REGENNITTER; MARC WHITE; KAREN WHITE; MICHAEL KIM; MIKE PARK; PENNY PARK; TIM PARKS; MAI HUYNH; JANET WANG; <br><br>     *Plaintiffs*, <br><br>   v. <br><br> TETON SPRINGS GOLF & CASTING CLUB, LLC; ANTHONY VEST; NUWAY d/b/a NUWAY PARTNERS and d/b/a NUWAY DEVELOPMENT; J.T. BRAMLETTE; RALPH BRINTON; AARON WERNLI; ROBERT MCFADDEN; EAGLE RIVER MORTGAGE, INC.; THOMAS A. SARTY; JOSEPH P. TIEDEKEN; HEADWATERS CONSTRUCTION, INC, f/k/a TETON SPRINGS CONSTRUCTION COMPANY; ALL SEASON RESORT REALTY, LLC, f/k/a TETON SPRINGS REALTY, LLC; RIVERS EDGE APPRAISAL SERVICE, LLC; CRAIG SMITH; TOM CLINTON; PATTI KAUF; BONNIE ETCHEMENDY; <br>    *Defendants.* | Case No. CV-08-99-E-ELJ-REB <br> Consolidated for purposes of discovery with <br> Case No. CV-08-299-EJL <br><br><br> (proposed) <br> READ PLAINTIFFS' THIRD AMENDED   COMPLAINT AND DEMAND FOR JURY TRIAL |

<u>READ PLAINTIFFS' THIRD AMENDED COMPLAINT</u>
<u>AND DEMAND FOR JURY TRIAL</u>

Plaintiffs Scott Read, Bruce and Susan Norton, Barbara Jean Dunbar, Edward and Patricia Call, Michael and Cynthia Regennitter, Denise Kamenzind, Marc and Karen White; Michael Kim, Mike and Penny Park Tim Parks, Mai Huynh, and Janet Wang ("Plaintiffs"), through their counsel of record, Meyerson Cagle, P.C., and local counsel of record Cooper & Larsen, respectfully come before this Court and assert the following against the above-named Defendants:

## I.      INTRODUCTION

1.1     Plaintiffs are homeowners in the "Teton Springs" real estate subdivision in Victor, Idaho.  Defendant Teton Springs Golf & Casting Club, LLC, its marketing agent NuWay Partners, its mortgage broker Eagle River Mortgage Co., contractor Headwaters Construction, Inc., appraiser Rivers Edge Appraisal Service, LLC, and the other collective defendants violated the *Interstate Land Sales Full Disclosure Act*, 15 U.S.C. § 1701 *et seq*. ("the Act"), Idaho's *General Contractor Disclosure Act* ("GCDA"), and the Idaho *Consumer Protection Act* ("CPA"), Idaho Code § 48-601 *et seq*. in the sale of real estate to Plaintiffs and others.  The collective defendants conduct in the sale of real estate to Plaintiffs also gives rise to common law causes of action for civil conspiracy, fraud, negligence, and breach of contract.  Plaintiffs seek all recoverable damages under law.

1.2     This matter involves the consolidation of two cases, one originally filed as *Scott Read, et al. v. Teton Springs Golf & Casting Club, LLC*, et al., Pending Cause No. 4:08-cv-00099-LMB; the other filed as *Chris Hamabe, et al. v. Teton Springs Golf & Casting Club, LLC, et al*.

## II.   JURISDICTION AND VENUE

2.1     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  Plaintiffs are asserting causes of action under federal law which involve federal questions. Subject matter jurisdiction is also specifically provided in the Act, 15 U.S.C. § 1719.

2.2     This Court has supplemental subject matter jurisdiction over Plaintiffs' state law causes of action under 28 U.S.C. § 1367(a).

2.3     The exercise of this Court's personal jurisdiction over defendants is proper.  All defendants are either residents of the State of Idaho or have sufficient minimum contacts with the State of Idaho and/or purposefully availed themselves of the laws and markets of Idaho so as not to offend traditional notions of fair play and substantial justice by forcing them to appear and answer this lawsuit.

2.4     Venue is proper in the Eastern Division of the United States District Court for the District of Idaho pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1.

## III.   PARTIES

A.   ***Plaintiffs***

3.1     Plaintiff Scott Read is an individual and resident of San Jose, California.  Mr. Read purchased a lot and house from and through Defendants in the Teton Springs development in Victor, Idaho.

3.2     Plaintiffs Bruce and Susan Norton are a married couple residing in Rancho Santa Fe, California.  The Nortons purchased a lot and house from and through Defendants in the Teton Springs development in Victor, Idaho.

3.3     Plaintiff Barbara Jean Dunbar is an individual and resident of Sandy, Utah.  Ms. Dunbar purchased a lot and house from and through Defendants in the Teton Springs development in Victor, Idaho.

3.4     Plaintiffs Edward and Patricia Call are a married couple residing in Escondido, California.  The Calls purchased a lot and house from and through Defendants in the Teton Springs development in Victor, Idaho.

3.5     Plaintiffs Paul and Kim Maples are a married couple residing in Calabasas, California.  Mr. Maples purchased two lots and homes from and through Defendants in the Teton Springs development in Victor, Idaho.

3.6     Plaintiffs Michael and Cynthia Regennitter are a married couple residing in Danville, California.  The Regennitters purchased a lot and house from and through Defendants in the Teton Springs development in Victor, Idaho.

3.7     Plaintiff Denise Kamenzind is an individual and resident of Los Angeles, California.  Ms. Kamenzind purchased a lot and house from and through Defendants in the Teton Springs development in Victor, Idaho.

3.8     Plaintiffs Marc and Karen White are a married couple residing in Escondido, California.  The Whites purchased a lot and house from and through Defendants in the Teton Springs development in Victor, Idaho.

3.9     Plaintiff Michael Kim is an individual and resident of San Diego, California.  Mr. Kim purchased a lot and house from and through Defendants in the Teton Springs development in Victor, Idaho.

3.10    Plaintiffs Mike and Penny Park are a married couple residing in Mesquite, Nevada.  The Parks purchased a lot and house from and through Defendants in the Teton Springs development in Victor, Idaho.

3.11    Plaintiff Tim Parks is an individual and resident of Enterprise, Oregon.  Mr. Parks purchased a lot and house from and through Defendants in the Teton Springs development in Victor, Idaho.

3.12    Plaintiff Mai Huynh is an individual and resident of Los Angeles, California.  Ms. Huynh purchased a lot and house from and through Defendants in the Teton Springs development in Victor, Idaho.

3.13    Plaintiff Janet Wang is an individual and resident of Redwood City, California. Ms. Wang purchased a lot and house from and through Defendants in the Teton Springs development in Victor, Idaho.

B.    *Defendants*

3.14    Defendant Teton Springs Golf & Casting Club, LLC ("Teton Springs") is a Wyoming limited liability company with its principal office located at 75 W 950 S, Suite 3, Victor, Idaho 83445.  Teton Springs developed "Teton Springs All Season Resort Community" ("the Subdivision").  Teton Springs has appeared and answered this matter through its attorneys of record, Roy Moulton, Sean Moulton, Amy Potter, and Faren Eddins of the Moulton Law Office.  Teton Springs is also represented by attorney pro hac vice Rich Capriola and Weinstock & Scavo, P.C.  Teton Springs a single business enterprise and/or a joint venture with the following entities:

3.14.1        Teton Headwaters, Inc., an Idaho corporation;

3.14.2         Headwaters Investment Group, LLC, an Idaho limited liability corporation;

3.14.3         Headwaters Investment Group, Inc., an Idaho corporation;

3.14.4         Headwaters Construction Company, an Idaho corporation (formerly Teton Springs Construction Company, an Idaho corporation);

3.14.5         All Season Resort Realty, LLC, an Idaho limited liability company (formerly Teton Springs Realty, LLC, an Idaho limited liability company);

3.14.6         The Teton Springs Foundation, Inc. an Idaho corporation;

3.14.7         Teton Springs, LLC, a Wyoming limited liability company; and

3.14.8         Teton Springs Water & Sewer Company, LLC, an Idaho limited liability company.

3.15     Defendant Anthony Vest is an individual and a manager of Teton Springs. Defendant Vest is a principal in Defendants Teton Springs Golf & Casting Club, LLC; Headwaters Construction Company; and All Season Resort Realty, LLC.  Defendant Vest is also a principal in Teton Springs Water & Sewer Company, LLC.  Defendant Vest, upon information and belief, resides in Teton Village, Wyoming.  Defendant Vest's wife, Sandra Vest, is a director of the non-profit Teton Springs Foundation, Inc. and a manager of Defendant Teton Springs Golf & Casting Club, LLC.  Vest has appeared and answered this matter through his attorneys of record, Roy Moulton, Sean Moulton, Amy Potter, and Faren Eddins of the Moulton Law Office, as well as Mr. Capriola of Weinstock & Scavo, P.C.

3.16     Defendant NuWay a/k/a NuWay Partners and a/k/a NuWay Development (collectively "NuWay") is, upon information and belief, a Nevada limited liability company whose LLC status has been revoked.  NuWay represented that it conducts business at 2005 East

2700 South Suite 140, Salt Lake City, Utah 84109.[1]  At all relevant times, NuWay conducted business in the State of Idaho,[2] although it has failed to register with the Idaho Secretary of State as a foreign business entity.

3.17    Defendant J.T. Bramlette is an individual and principal and/or executive manager of NuWay who, upon information and belief, resides in Bountiful, Utah.

3.18    Defendant Ralph Brinton is an individual and principal and/or executive manager of NuWay who, upon information and belief, resides in Lehi, Utah.

3.19    Defendant Aaron Wernli is an individual and principal and/or executive manager of NuWay who, upon information and belief, resides in Bountiful, Utah.  Upon information and belief, Mr. Wernli resides and may be served with process at 640 East 2025 S, Bountiful, Utah 84010.

3.20    Defendant Robert McFadden is an individual and principal and/or executive manager of NuWay who, upon information and belief, resides and can be served at 2435 West 520th N, Provo, Utah.

3.21    Defendant Eagle River Mortgage, Inc. ("Eagle River") is an Idaho corporation with its principal place of business at 439 East Shore Drive, Suite 120, Eagle, Idaho 83616. Eagle River appeared and answered this matter through its attorneys of record, Sam Johnson of Johnson & Monteleone, L.L.P.  Mr. Johnson has since withdrawn from representation.  To date, Defendant Eagle River has not provided notice of new counsel.

3.22    Defendant Thomas A. Sarty is an individual and, upon information and belief, an Idaho resident.  Sarty is an agent of Eagle River.  Sarty has appeared and answered this matter through Mr. Johnson of Johnson & Monteleone, L.L.P.

---

[1] http://www.mynuway.com/index.php?p_matter=contact
[2] http://www.mynuway.com/index.php?p_matter=investors_teton

3.23    Defendant Joseph P. Tiedeken is an individual and, upon information and belief, an Idaho resident.  Tiedeken is an agent of Eagle River.  Tiedeken has appeared and answered this matter through Mr. Johnson of Johnson & Monteleone, L.L.P.  Mr. Johnson has since withdrawn from representation.  Defendant Tiedeken is currently *pro se*.

3.24    Defendant Headwaters Construction, Inc. ("Headwaters") is a Wyoming corporation d/b/a Headwaters Construction Company of Idaho f/k/a/ Teton Springs Construction Company.  Headwaters is a member of the Teton Springs family of entities with its principal place of business at 75 West 950, Victor, Idaho 83455.  Headwaters has appeared and answered this matter through its attorneys of record, Roy Moulton, Sean Moulton, Amy Potter, and Faren Eddins of the Moulton Law Office.

3.25    Defendant All Season Resort Realty, LLC f/k/a Teton Springs Realty, LLC ("All Season") is an Idaho limited liability company with its principal place of business at 1 Teton Springs Parkway in Victor, Idaho.  All Season is a member of the Teton Springs family of entities.  All Season has appeared and answered this matter through its attorneys of record Phillip Collaer, Yvonne Vaughan, and Anderson Julian & Hull, LLP.

3.26    Defendant Sarah Anderson is an individual and resident of Idaho.  Ms. Anderson is an agent of All Season Resort Realty, LLC.  Ms. Anderson has appeared and answered this lawsuit through her attorneys of record Phillip Collaer, Yvonne Vaughan and Anderson Julian & Hull, LLP.

3.27    Defendant Tom Clinton is an individual and resident of Idaho.  Mr. Clinton is the registered broker for All Season Resort Realty, LLC.  Mr. Clinton may be served with process at his principle place of business, 1 Teton Springs Parkway, Victor, Idaho 83455.

3.28     Defendant Patti Kauf is an individual and resident of Idaho.  Ms. Kauf is an agent of All Season Resort Realty, LLC.  Ms. Kauf may be served with process at her principle place of business, 1 Teton Springs Parkway, Victor, Idaho 83455.

3.29     Defendant Bonnie Etchemendy is an individual and resident of Idaho.  Ms. Etchemendy is a broker and agent of All Season Resort Realty, LLC.  Ms. Etchemendy may be served with process at her principle place of business, 1 Teton Springs Parkway, Victor, Idaho 83455.  Ms. Anderson, Mr. Clinton, Ms.Kauf, and Ms. Etchemendy will be referred to as the ("All Season Agents").

C.     *Settling Defendants*

3.30     Defendant Rivers Edge Appraisal Service, LLC ("Rivers Edge") is a settling Defendant to this matter.  Plaintiffs and Rivers Edge have executed a mutual release of claims.  Rivers Edge is represented by its attorneys of record, Donald Carey and Jeremy Brown of Quane Smith, LLP.

3.31     Defendant Craig Smith is a settling Defendant to this matter.  Plaintiffs and Smith have executed a mutual release of claims.  Smith is represented by his attorneys of record, Donald Carey and Jeremy Brown of Quane Smith, LLP.

D.     *Relevant Non-Parties*

3.32     First Horizon Home Loan Corporation ("First Horizon") is a subsidiary of First Tennessee Bank, N.A. located in Irvine, Texas.  First Horizon is a lender to several Plaintiffs.

3.33     National City Mortgage Company ("National City") is a division of National City Bank located in Dayton, Ohio.  National City is a lender to several Plaintiffs.  Defendant Headwaters Construction Company has brought a cause of action pending in this Court based on similar factual and legal issues.  National City has appeared and answered the lawsuit instigated

by Headwaters through Kelly McConnell, Amber Dina, and Givens Pursley, LLP.  Plaintiffs assert that the lawsuit against Headwaters involves legal and factual issues substantially similar to those asserted in this lawsuit and the interests of judicial economy will be best served by consolidating these lawsuits.

3.34    Aegis Mortgage Corporation ("Aegis") is a Delaware Corporation with its principal place of business in Houston, Texas.  Aegis is a lender to several Plaintiffs.

## IV.    PERTINENT FACTS

4.0    This case involves a real estate scheme that resulted in payments to Defendants totaling approximately $26,000,000 and leaving Plaintiffs in severe financial distress with ruined credit.

### A.    *The Teton Springs Development*

4.1    Teton Springs All Resort Community, the "Subdivision" as that term is defined in 15 U.S.C. § 1701(3), is a real estate development developed by Defendant Teton Springs.  It is located in Victor, Idaho.  According to its advertisements, the Subdivision encompasses seven hundred eighty (780) acres of land.  It offers a "wide range of carefully designed home ownership options."  Buyers can "[c]hoose from custom homes, cabins, condominiums, or a fractional ownership in the Residence Club."[3]

### B.    *Defendants' Status Under the Interstate Land Sales Disclosure Act*

4.2    Defendant Teton Springs and Mr. Vest as its manager are collectively the "developers" of the Subdivision as the term "developer" is defined under 15 U.S.C. § 1701(5).

4.3    Teton Springs sold a "lot" or "lots," as the term "lot" is defined under 24 C.F.R. § 1701.1(b), to Plaintiffs and other purchasers in interstate commerce.

---

[3] http://www.tetonsprings.com/real-estate-overview.php

4.4     Defendant Tony Vest was and is a developer of the Subdivision and has acted as both a "developer" and the "agent" of Teton Springs, in the promotion, location, availability, sale and marketing of the Subdivision lots, as those terms are defined under 15 U.S.C. §§ 1701(5), (6), and (3).  Defendant Vest was the decision-maker for the Teton Springs project.  On July 31, 2001 Defendant Vest and Teton Springs entered into a Management Contract granting Vest management authority.[4]  Moreover, Defendant Vest was responsible for the marketing and setting the prices for the grossly-overvalued lots and homes to Plaintiffs.[5]

4.5     Defendant NuWay is and has acted as "agent" for Teton Springs in the promotion, location, availability, sale, and marketing of the Subdivision lots, as those terms are defined under 15 U.S.C. §§ 1701 (5), (6), and (3).

4.6     Defendant McFadden is an has acted as "agent" for Teton Springs in the promotion, location, availability, sale and marketing of the Subdivision lots, as those terms are defined by 15 U.S.C. §§ 1701 (5), (6), and (3).

4.7     Defendants Bramlette, Brinton and Wernli are and have acted as the "agent(s)" for Teton Springs in the promotion, location, availability, sale and marketing of the "Subdivision" lots, as those terms are defined by 15 U.S.C. §§ 1701(6), and (3).

4.8     Defendant All Season is and has acted as "agent" for Teton Springs is the promotion, location, availability, sale, and marketing of the Subdivision lots, as those terms are defined under 15 U.S.C. §§ 1701 (5), (6), and (3).

---

[4]  *See Consulting Services Contract between Management Programs Corporation and Teton Springs Golf & Casting Club, LLC*, attached as *Exhibit 1* to the *[Hamabe] Plaintiffs' First Amended Complaint and Demand for Jury Trial.*

[5]  *See* p. 27, ln. 9 – p. 28, ln. 17; p. 3, ln. 20 – p. 34, ln. 2 of *Deposition of James Eden* taken during discovery of *Harger, et al. v. Teton Springs, LLC, et al.*, Case No. CV 04-223 in Teton County District Court, 7th Judicial District.  Relevant excerpts are attached as *Exhibit 2* to the *[Hamabe] Plaintiffs' First Amended Complaint and Demand for Jury Trial.*

4.9     Defendant Eagle River is and has acted as the "agent" for Teton Springs in the promotion, location, availability, sale and marketing of the Subdivision lots, as those terms are defined by 15 U.S.C. §§ 1701 (5), (6), and (3).

4.10    Defendants Sarty and Tiedeken are and have acted as the "agent(s)" for Teton Springs in the promotion, location, availability, sale and marketing of the Subdivision lots, as those terms are defined by 15 U.S.C. §§ 1701 (5), (6), and (3).

4.11    Defendants who have been listed as "agents" of Teton Springs will be collectively referred to as the "Teton Springs Agents."

C.      ***The Lot Sale and Construction Contracts***

4.12    Teton Springs set up the sales of the Teton Springs development to Plaintiffs so that there would be two separate transactions:  (1) a lot sales contract and (2) a construction contract.  Plaintiffs would purchase the lot itself from Teton Springs.  Plaintiff would also enter into a construction contract with Teton Spring's related entity, Headwaters Construction, Inc., to actually build the house on the lot.

4.13    Plaintiffs typically paid around $200,000.00 - $300,000.00 to Teton Springs for the lot itself and around $650,000.00 - $800,000.00 to Headwaters for the construction.  The construction contract price exceeded the typical industry price.

4.14    Several months prior, All Season and Agent Bonny Etchemendy had marketed the same lots for $130,000.00.  This was never disclosed to Plaintiffs by any Defendants.  This also was not disclosed to the appraiser, Craig Smith.

4.15    Headwaters and Teton Springs (as well as Defendant All Season) are related entities, both being run by Defendant Anthony Vest.  Vest and his partners also own and run the Homeowner's Association and Utilities Company that services the development.

D.      *NuWay's Representations*

4.16    Defendant NuWay represented itself as a full service Real Estate development company specializing in pre-construction real estate.  In fact NuWay specifically represented to Plaintiffs and others that "if you buy a property in pre-construction today, that property will be worth significantly more the day it is finished."[6]  NuWay specifically represented to potential investors, including Plaintiffs, that it performs all necessary research of risk involved with each project.  NuWay specifically represented that it would "provide a complete package of services from identifying the property, to packaging the financing, title and escrow services, and holding the client's hand throughout the entire process."[7]  NuWay specifically represented that it would "mentor, guide and counsel" its investors, including Plaintiffs, throughout the investment process.[8]

4.17    On or about March 3, 2006, NuWay signed a contract with Defendant Vest and Teton Springs to serve as marketing agent for Teton Springs with regard to the marketing and sale of Mountain Meadows homes to Plaintiffs and others.  Although Bramlette was not a licensed real estate professional, in Idaho or elsewhere, he later signed lot sales contracts for Mountain Meadows homes in Teton Springs as "Authorized Agent" for CO-BROKER NuWay on behalf and for the benefit of Defendants Teton Springs and Vest.

4.18    NuWay representatives, on behalf and for the benefit of Defendants Teton Springs and Vest, traveled throughout the western United States marketing the Mountain Meadows subdivision of the Teton Springs development.  NuWay represented to Plaintiffs and others that they would realize an immediate profit on the Teton Springs lots.  NuWay's oral representations and marketing literature promised that Teton Spring lots enjoyed a 30% appreciation over the

---

[6] http://www.mynuway.com/index.php?p_matter=investors_faq.
[7] http://www.mynuway.com/index.php?p_matter=investors.
[8] http://www.mynuway.com/index.php?p_matter=investors_why.

last three years, while some areas of the Teton Springs development appreciated at a rate of 45% over the last six months.  NuWay representatives represented to Plaintiffs and others that Teton Springs is close to Jackson Hole, Wyoming "without the Jackson prices."

4.19    Beginning in March of 2006, NuWay represented to Plaintiffs and others that it was important to get in early on in a real estate investment and that Teton Springs was a "home run" investment.

4.20    Beginning in March of 2006, NuWay represented to Plaintiffs and others that Teton Springs homes were "already appraised" for $1,400,000.00 and investors would enjoy an immediate vesting of $300,000.00 to $400,000.00 in "instant equity" upon purchasing the lot. These statements were false and known to be false when made.

4.21    Beginning in March of 2006, NuWay represented to Plaintiffs and others that there would be no payments until construction was completed.  These statements were false and known to be false when made.

4.22    Beginning in March of 2006, NuWay represented to Plaintiffs and others that a bank would issue a home equity line of credit ("HELOC") "even to a dead man" to cover any mortgage payments on the purchases.  These statements were false and known to be false when made.

4.23    NuWay recommended that Plaintiffs and others "flip" the property.  The strategy sold to Plaintiffs and others was to purchase the lot pre-construction, immediately realize the $300,000.00 to $400,000.00 in "instant equity," and sell the property upon completion.  NuWay assured Plaintiffs and others that the HELOC provided a safety net in the event any payments had to be covered until the property was sold.

4.24    NuWay represented to Plaintiffs and others that Teton Springs was a no-risk investment, and that investors would have no difficulty exiting when desired.  NuWay even represented that it would re-purchase lots from any unsatisfied investors. These statements were false and known to be false when made.

4.25    NuWay represented to Plaintiffs and others that the investment opportunity was available because "the developer" was looking for "straw men" buyers to raise seed money for the development.

4.26    Most Plaintiffs entered into their respective lot sales contracts between April and August of 2006.  In September of 2006, NuWay, on behalf of Teton Springs, invited Plaintiffs and others on an all-expenses paid "Round-up" trip to Teton Springs.  At the "Round-up", NuWay re-iterated these representations to Plaintiffs and others in order to induce Plaintiffs to continue on with Teton Springs' investment project.  Defendants Vest, Teton Springs, All Season, and Anderson also reiterated NuWay's representations at the Round-Up and encouraged Plaintiffs' continued involvement in the Mountain Meadows investment.

4.27    NuWay was listed as "CO-BROKER" on the lot sales contract from Defendant Teton Springs Golf & Casting Club, LLC to Plaintiffs.  Neither J.T. Bramlette, Aaron Wernli, Rob McFadden, Ralph Brinton, nor anyone else associated with NuWay holds an Idaho real estate agent or broker license.  NuWay acting as Teton Springs' "CO-BROKER" in this manner is in contravention of Idaho Code § 54-2054.

E.    *The Eagle River Lending Process*

4.28    Eagle River, through Sarty and Tiedeken, was the preferred mortgage broker which NuWay referred Teton Springs investors to obtain money for financing lots in the Subdivision.

4.29    Eagle River would actually complete the loan application on behalf of the purchasers and would submit the documentation to various lenders, most notably those listed above as "relevant non-parties," for construction and permanent financing.

4.30    Eagle River, through Sarty, Tiedeken, and other representatives, frequently and without knowledge and/or authorization from the loan applicants would, in some instances, greatly overstate the applicant's monthly income in order to qualify the applicant for loan financing.

4.31    Eagle River and Tiedeken specifically told Plaintiffs to "leave income blank," there would be "no payments for the life of the loan," and that the Larkspur model had "$1.4M Appraisal."

4.32    Eagle River dealt directly with lenders.  Rarely did the investors themselves interact with the lenders.

4.33    Eagle River, through Sarty, Tiedeken and other representatives, frequently assured Plaintiffs and other investors that investing in Teton Springs was a great deal.  Eagle River and its representatives re-iterated and supported the representations made by NuWay that there would be an immediate vesting of equity upon purchase of the lots.

4.34    Whenever questioned, Eagle River, through Sarty, Tiedeken and other representatives, provided false information to Plaintiffs in an effort to induce Plaintiffs to sign the documents Eagle River created.  Plaintiffs relied on the professional advice of Eagle River, Sarty, and Tiedeken..

4.35    Eagle River representative Joe Tiedeken (who used a NuWay email address) went so far as to solicit and receive personal loans of up to $50,000.00 from Plaintiff Chris Frye.  This

money was never repaid.  Tiedeken also solicited personal loans from other Plaintiffs including Ed Call.

 F. ***Rivers Edge's False and Deceptive Appraisals***

 4.36 Settling Defendant Rivers Edge conducted the appraisals of the House/Lot Combos for Eagle River.  Eagle River exclusively used Rivers Edge for the preparation of Appraisal Reports of Teton Springs House/Lot Combos.  As noted below, Smith and Rivers Edge completed an initial appraisal report for closing of the lot sale and construction contracts, and a second appraisal report when Plaintiffs' construction loans were converted into conventional mortgages.  The appraisal reports are nearly identical in substance.  Rivers Edge charged $750.00 for the initial cloned reports and $1,000.00 for the second cloned reports.  The monies for these charges were taken out of Plaintiffs' funds at closing.  A typical charge for a valid appraisal of a similar sized house in Idaho is around $450.00.

 4.37 The Idaho Board of Real Estate Appraisers revoked Craig Smith's professional license as a result of the creation and dissemination of his false and deceptive appraisal reports of Plaintiffs' Teton Springs properties.  The Idaho Board of Real Estate Appraisers found that Smith had violated both the "cost" approach and the "value" approach in contravention of the Uniform Standards of Professional Appraisal Practices.

 4.38 During the spring and summer of 2006, when most Plaintiffs purchased their Teton Springs properties, few if any houses in the Mountain Meadows portion of the Subdivision were completed.  The completed homes in this portion of the subdivision were the model homes.

 4.39 Although NuWay's representations of "instant equity," made on behalf and for the benefit of Defendants Teton Springs and Vest, rested on alleged "appraisal reports coming in

at $1,400,000," no appraisal reports with regard to Mountain Meadows were performed until April of 2006, when Plaintiffs and others first entered into the contract for the lot/home combos.

4.40    Rivers Edge's first appraisal reports (performed from April to August of 2006) used sales comparables from Teton Springs homes outside of the Mountain Meadows subdivision, which were not remotely comparable to Plaintiffs' Mountain Meadows homes.  The first appraisal reports relied heavily on plans and specifications provided to Rivers Edge from Defendants Teton Springs and Headwaters.  The plans and specifications Smith relied on in creating his appraisal reports were different than the final plans and specifications used in construction of the homes.  These initial appraisal reports used sales comparables (among them 28 Rendezvous Trail and 29 Bannock Circle) of homes sold from Teton Springs Golf & Casting Club, LLC member and insider Rick Brawner to outside parties.

4.41    When Plaintiffs' construction loans were converted into conventional mortgages upon completion of construction, Rivers Edge performed a second appraisal on each property. These second appraisal reports relied on the same three model homes in the Subdivision itself for sales comparables.  One of the model homes was sold from Defendant Teton Springs to its agent and principal of NuWay, J.T. Bramlette.  This listed a "sales price" of $1,354,000.00.  However, the sales contract between Teton Springs and Bramlette included a repayment of $401,292.50 to "third party, NuWay Inc.," of which Bramlette himself is the owner.  Bramlette borrowed over $200,000.00 from Plaintiffs Bruce and Susan Norton's retirement funds in order to make the down payment.  This money was never repaid and the debt was discharged in Bramlette's bankruptcy proceeding.  The other two model homes listed as sales comparables were to Plaintiffs Ed Sepulveda and Bulmaro Gonzalez.  The sales contracts to Sepulveda and Gonzalez

contained similar repayments to NuWay.   These appraisal reports reference MLS listings submitted by Defendant Sarah Anderson as verification.

G.     ***Anderson and All Season's False and Deceptive MLS Submissions***

4.42     As noted in the preceding paragraph, Smith's appraisal reports use the sales of the Teton Springs model home, including the sale to Bramlette, as sales comparables.  The appraisal reports rest on Defendant Sarah Anderson's submission of the sales into MLS listings as "verification" for the information.   Neither Rivers Edge's appraisal reports nor Defendant Anderson's MLS listings reference the insider transaction between Defendant Teton Springs and its own marketing agent.   Neither Rivers Edge's appraisal reports nor Defendant Anderson's MLS listings reference the repayments to NuWay.

4.43     Defendant Anderson was explicitly aware that Mr. Bramlette was NuWay's principal and Teton Springs' marketing agent, and that the properties were marketed by Bramlette, on behalf of Teton Springs, as investment properties.   Anderson was typically the contact that NuWay had with Vest as well as having various direct contact with some Plaintiffs. In fact, ***Defendant Anderson and Bramlette appeared in a marketing video together*** reiterating the NuWay representations regarding the Teton Springs project.   In this video, Bramlette specifically states that the plan was to "sell, to investors, with built in equity."[9]  Bramlette goes on to falsely state that "all of our buyers who have gotten in in the past have made a substantial amount of money and appreciation."[10]  Bramlette's deposition testimony admits that the video contains additional false statements of fact, including "we went in and purchased 120 lots in the smallest price point area" and "NuWay has its own construction site, its own construction company."   Despite Defendant Anderson's knowledge of Bramlette and NuWay's role as

---

[9]  At 4:35.
[10]  At 4:55.

marketing agent for Defendants Vest and Teton Springs, she nonetheless submitted the sales of the Teton Springs model homes, including the insider sale to Bramlette, in MLS listings without reference to the repayments of the sales price to NuWay.

## V.      JOINT AND SEVERAL LIABILTY

### A.      *Agency/Joint Venture*

5.1      At all relevant times, Defendants Teton Springs Golf & Casting Club, LLC; Anthony Vest; Headwaters Construction Company, Inc.; NuWay d/b/a NuWay Partners, d/b/a NuWay Development; J.T. Bramlette; Ralph Brinton; Aaron Wernli; Robert McFadden; Eagle River Mortgage, Inc.; Thomas Sarty; Joseph Tiedeken; All Season Resort Realty, LLC; Sarah Anderson; Tom Clinton; Patti Kauf; and Bonnie Etchemendy; individually and collectively, were agents and/or joint ventures of each of the other defendants.  These defendants' conduct as outlined in this *Complaint* was performed in the course and scope of such agency and/or joint venture.  These Defendants had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced in, and/or authorized the wrongful acts of these co-Defendants, and/or retained the benefits of those wrongful acts.

### B.      *Aiding and Abetting*

5.2      Defendants Teton Springs Golf & Casting Club, LLC; Anthony Vest; Headwaters Construction Company, Inc.; NuWay d/b/a NuWay Partners, d/b/a NuWay Development; J.T. Bramlette; Ralph Brinton; Aaron Wernli; Robert McFadden; Eagle River Mortgage, Inc.; Thomas Sarty; Joseph Tiedeken; All Season, Sarah Anderson, Tom Clinton, Bonny Etchemendy, and Patti Kauf  collectively aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching statutory, tortuous, and contractual duties to Plaintiffs in violation of federal and state law.  In acting in this manner, these Defendants acted with an

awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

       C.    *Conspiracy*

      5.3     Defendants Teton Springs Golf & Casting Club, LLC; Anthony Vest; Headwaters Construction Company, Inc.; NuWay d/b/a NuWay Partners, d/b/a NuWay Development; J.T. Bramlette; Ralph Brinton; Aaron Wernli; Robert McFadden; Eagle River Mortgage, Inc.; Thomas Sarty; and Joseph Tiedeken; knowingly and willfully conspired, engaged in a common enterprise, and engaged in a common course of conduct to accomplish the wrongs complained of in this *Complaint*.  The purpose and effect of this conspiracy, common enterprise, and common course of conduct complained of was for the financial benefit of these Defendants at the expense of Plaintiffs through these Defendants' fraudulent activities.  These Defendants accomplished this conspiracy, common enterprise, and common course of conduct by misrepresenting and concealing material information from Plaintiffs regarding the nature and efficacy of their investments, and by taking steps and making statements in furtherance of their wrongdoing. These Defendants were direct, necessary, and substantial participants in the conspiracy, common enterprise, and common course of conduct, and were aware of their contribution and furtherance of the conspiracy to defraud Plaintiffs.

       D.    *Acting in Concert*

      5.4     At all relevant times, Defendants Teton Springs Golf & Casting Club, LLC; Anthony Vest; Headwaters Construction Company, Inc.; NuWay d/b/a NuWay Partners, d/b/a NuWay Development; J.T. Bramlette; Ralph Brinton; Aaron Wernli; Robert McFadden; Eagle River Mortgage, Inc.; Thomas Sarty; and Joseph Tiedeken were "acting in concert" and pursuing a common plan or design which resulted in the commission of an intentional or reckless tortious

act. Thus, these Defendants are jointly and severally liable to Plaintiffs under Idaho Code § 6-803(5).

VI.    CAUSES OF ACTION

A.    ***First Cause of Action:  Common Law Fraud*** *against Defendants Teton Springs Golf & Casting Club, LLC; Anthony Vest; NuWay d/b/a NuWay Partners and d/b/a NuWay Development; J.T. Bramlette; Ralph Brinton; Aaron Wernli; Robert McFadden; Eagle River Mortgage, Inc.; Thomas Sarty; and Joseph Tiedeken*

6.1    As noted above, Defendants made a number of representations to Plaintiffs to induce them to purchase the lots and enter into the Construction Contracts.  Specifically, some of the representations by Defendants included:

6.1.1    NuWay, on behalf and for the benefit of Defendants Teton Springs and Vest, selectively targeted real estate investment clubs to promote the sale of the House/Lot Combos and represented a purchase as a ***"no risk" investment***.  NuWay made these statements as agents for Teton Springs.  This statement was reiterated and supported by other Defendants.  This statement was false.  Defendants knew of the statement's falsity at the time in which it was made.

6.1.2    NuWay, on behalf and for the benefit of Defendants Teton Springs and Vest, repeatedly through numerous sales presentations, emails, internet advertising and individual representations to Plaintiffs and other individuals, represented that, depending on the size of the house in the lot/house combo and investor purchasing in the Subdivision would have ***immediate equity from $300,000.00 to $400,000.00***.  NuWay made these statements as agents for Teton Springs.  This statement was reiterated and supported by other Defendants.  This statement was false.  Defendants knew of the statement's falsity at the time in which it was made.

6.1.3    NuWay, on behalf and for the benefit of Defendants Teton Springs and Vest, repeatedly represented to investors, including Plaintiffs, that a purchaser of a lot/house

combo in the Subdivision would have ***no difficulty selling*** the lot/house combo.  NuWay made these statements as agents for Teton Springs.  This statement was reiterated and supported by other Defendants.  This statement was false.  Defendants knew of the statement's falsity at the time in which it was made.

6.1.4   NuWay, on behalf and for the benefit of Defendants Teton Springs and Vest, repeatedly represented to investors, including Plaintiffs, that a lot/house combo in the Subdivision was in ***high demand***.  NuWay made these statements as agents for Teton Springs.  This statement was reiterated and supported by other Defendants.  This statement was false.  Defendants' knew of the statement's falsity.

6.1.5   NuWay, on behalf and for the benefit of Defendants Teton Springs and Vest, repeatedly represented to investors, including Plaintiffs, that once a lot/house combo in the Subdivision was completed and it became necessary for the investor to exit the investment, the ***"developer" would buy back*** the lot/house combo.  NuWay made these statements as agents for Teton Springs.  This statement was reiterated and supported by other Defendants.  This statement was false.  Defendants knew of the statement's falsity at the time in which it was made.

6.1.6   NuWay, on behalf and for the benefit of Defendants Teton Springs and Vest, repeatedly represented to investors, including Plaintiffs, that NuWay ***researched all possible risk and profit*** involved in the sales of Lots in the Subdivision.  NuWay made these statements as agents for Teton Springs.  This statement was reiterated and supported by other Defendants.  This statement was false.  Defendants knew of the statement's falsity at the time in which it was made.

6.2    The statements made above were at the direction of Defendants Teton Springs and Vest and for the financial benefit of Defendants Teton Springs and Vest.  Defendants Teton

Springs and Vest ratified NuWay's conduct by accepting the financial benefits of NuWay's representations and are accordingly liable for NuWay's conduct.

6.3     Defendants' conduct as outlined above constitutes fraud.  Defendants made statements and representations of fact, which were material and false.  The statements and representations were made seeking Plaintiffs' reliance on them.  Plaintiffs justifiably relied on the statements and representations in purchasing the lots and entering into the construction contracts.  As a direct and proximate result, Plaintiffs suffered damages.

B.     ***Second Cause of Action:  Negligence*** *against all Defendants.*[11]

6.4     All Defendants owed legal duties to Plaintiffs.  All Defendants' conduct as outlined above breached those duties to Plaintiffs.  All Defendants' breaches of their legal duties to Plaintiffs proximately caused Plaintiffs damages.

6.5     Defendants All Season, Clinton, Etchemendy, Kauf, and Anderson failed to inform Plaintiffs of the following material facts:

6.5.1   All Season and its agents[12] failed to inform Plaintiffs that NuWay was acting as "CO-BROKER" for Defendant Teton Springs.  In fact, in spite of the fact that Defendant Anderson had actual knowledge that NuWay was contractually Defendant Teton Springs and Vest's marketing agent and "CO-BROKER" alongside her and All Season, she represented that NuWay was acting as Plaintiffs' agent.

6.5.2   All Season and its agents failed to inform Plaintiffs that NuWay's McFadden, Bramlette, and Wernli were unlicensed to practice real estate in Idaho or elsewhere.  As outlined below, the failure to disclose this material fact is also in contravention of Idaho Code § 54-2054(2) and constitutes negligence *per se.*

---

[11]  With regard to Defendant Headwaters Construction Company, only Plaintiffs Janet Wang, Paul Maples, Mai Huynh, and Mike & Penny Park bring this cause of action.

[12]  Including brokers.

6.5.3   All Season and its agents failed to inform Plaintiffs that there was no factual bases (reliable appraisal reports or otherwise) for its "CO-BROKERS" false representations of "instant equity."

6.6     Defendant All Season and its agents breached duties owed to Plaintiffs through the following affirmative actions:

6.6.1   All Season and its agents published information they knew or should have known was false to third party buyers of homes from Teton Springs and its insiders;

6.6.2   All Season and its agents published misleading information in MLS reports, which also negligently inflated the market value of the Teton Springs home.

6.6.3   All Season and its agents created the initial marketing materials for the Mountain Meadows subdivision, which it knew or should have known relied on no factual bases.

6.6.4   Defendants Clinton and Etchemendy were brokers responsible for the actions of Defendant Anderson.  The actions of Defendants All Season, Clinton, Etchemendy, Kauf, and Anderson breached duties they owed to Plaintiffs.  As a direct and proximate result, Plaintiffs suffered damages in an amount to be determined at trial.

6.6.5   Defendants All Season and its Brokers failed to inform Plaintiffs that Defendants Teton Springs Golf & Casting Club, LLC; Headwaters Construction Company, Inc.; All Season Resort Realty, LLC; Teton Springs Water & Sewer Company, LLC; and The Teton Springs Foundation were a single business enterprise controlled, all controlled and managed by Defendant Anthony Vest.

6.7     Defendants Teton Springs and Vest signed a contract with J.T. Bramlette and NuWay making NuWay Teton Springs' marketing agent, without performing any diligence into whether Bramlette and/or other NuWay principals, agents, and employees were licensed to

market and sell real estate in Idaho.  Defendants Teton Springs, Vest, Anderson, All Season, Etchemendy, Clinton, and Kauf failed to inform Plaintiffs of this agreement.  Defendants Teton Springs and Vest, personally, owed a duty to Plaintiffs and others to supervise its agent as an ordinarily prudent person in the same or similar circumstances would have.  Defendants Teton Springs and Vest negligently supervised its marketing agent NuWay's conduct in marketing the Mountain Meadows subdivision of the Teton Springs development to Plaintiffs and others.  As a direct and proximate result of Defendant Teton Springs and Vest's negligence, Plaintiffs suffered damages in an amount to be proven at trial.

    C.     ***Third Cause of Action:  Negligence Per Se*** *against all Defendants Teton Springs Golf & Casting Club, LLC; Anthony Vest; All Season Resort Realty, LLC; Thomas Clinton; Bonny Etchemendy; Patti Kauf; and Sarah Anderson*

    6.8     The Idaho Code strictly prohibits unlicensed persons from practicing real estate.  Idaho Code § 54-2002.

    6.9     Defendants Teton Springs Golf & Casting Club, LLC; Anthony Vest; All Season Resort Realty, LLC; Thomas Clinton; Bonny Etchemendy; Patti Kauf; and Sarah Anderson engaged in the business or act in the capacity of real estate brokers and salespersons alongside unlicensed real estate professionals including Bramlette, Wernli, and McFadden.  These Defendants actively encouraged Bramlette, Wernli, and McFadden's unlicensed practice of real estate in contravention of Idaho Code § 54-2002.

    6.10     This statute clearly defines a standard of conduct prohibiting the unlicensed practice of real estate.  This statute was intended to ensure that persons engaged in real estate transactions are subject to the proper rules and regulations to prevent exactly the harm suffered by Plaintiffs.  Plaintiffs are members of the class of persons this statute is meant to protect.

Defendants' violation of this statute and conspiracy to violate this statute proximately caused Plaintiffs' financial injury in an amount to be proven at trial.

6.11    The Idaho Code strictly prohibits "[f]ee-splitting with unlicensed persons."  Idaho Code § 54-2054(2).

6.12    Defendants Teton Springs Golf & Casting Club, LLC; Anthony Vest; All Season Resort Realty, LLC; Thomas Clinton; Bonny Etchemendy; Patti Kauf; and Sarah Anderson split fees and commissions on the sales of Plaintiffs homes with unlicensed persons and entities, namely NuWay, J.T. Bramlette, Aaron Wernli, and Rob McFadden.

6.13    This statute clearly defines a standard of conduct applicable to real estate professionals to refrain from splitting commissions or fees with unlicensed persons.  This statute was intended to ensure that persons engaged in real estate transactions are subject to the proper rules and regulations to prevent exactly the harm suffered by Plaintiffs.  Plaintiffs are members of the class of persons this statute is meant to protect.  Defendants' violation of this statute proximately caused Plaintiffs' financial injury in an amount to be proven at trial.

D.    ***Fourth Cause of Action:  Gross Negligence*** *against all Defendants.*[13]

6.14    As outlined above, all Defendants owed legal duties to Plaintiffs.  Defendants' conduct as outlined above constitutes the doing or failing to do an act which a reasonable person or entity in a similar situation and of similar responsibility would, with a minimum of contemplation, be inescapably drawn to recognize his or her (or its) duty to do or not do such act.  Defendants' failure to conform to this duty demonstrates a deliberate indifference to the harmful consequences of others.  Accordingly, all Defendants are liable for gross negligence.

---

[13]  With regard to Defendant Headwaters Construction Company, only Plaintiffs Janet Wang, Paul Maples, Mai Huynh, and Mike & Penny Park bring this cause of action.

E.      ***Fifth Cause of Action:  Breach of Contract*** *against all Defendants.*[14]

6.15    Defendants owed contractual and quasi-contractual obligations to Plaintiffs. Defendants' conduct as outlined above materially breached those obligations.  As a result of Defendants' breaches of their contractual obligations to Plaintiffs, Plaintiffs suffered damages.

F.      ***Sixth Cause of Action:  Joint Venture*** *against Defendants Teton Springs Golf & Casting Club, LLC; Anthony Vest; Headwaters Construction Company, Inc.; Eagle River Mortgage, Inc.; Tom Sarty; Joe Tiedeken; All Season Resort Realty, LLC; Sarah Anderson; Thomas Clinton; Bonnie Etchemendy; and Patti Kauf*[15]

6.16    Although referenced in Paragraph 5.1 of this Complaint, Plaintiffs specifically plead that the above-named Defendants engaged in a joint venture (or joint enterprise) in that there was (1) an agreement, express or implied, among these Defendants, (2) a common purpose to be carried out by the group, (3) a community of pecuniary interest in that purpose among these Defendants, and (4) an equal right to a voice in the direction of the enterprise.

6.17    Defendants All Season, Anderson, Clinton, Etchemendy, and Kauf reasonably should have known of the Teton Springs Defendants' wrongful acts, error, omissions and representations to Plaintiffs.  Thus, this cause of action is not precluded by Idaho Code §§ 54-2093 and 54-2094 as outlined in *Hug v. Mountain Lakes Realty, Inc*., 2007 WL 5587139 (Idaho Dist. Ct., 3rd Jud. Dist. 2007).

---

[14] With regard to Defendant Headwaters Construction Company, only Plaintiffs Janet Wang, Paul Maples, Mai Huynh, and Mike & Penny Park bring this cause of action.

[15] With regard to Defendant Headwaters Construction Company, only Plaintiffs Janet Wang, Paul Maples, Mai Huynh, and Mike & Penny Park bring this cause of action.

G.      *Seventh Cause of Action:  Defendants' Violation of the Interstate Land Sale Full Disclosure Act, 15 U.S.C. § 1703(a)(1)(A) against Defendants Teton Springs Golf & Casting Club, LLC; Anthony Vest; Headwaters Construction Company, Inc.; NuWay d/b/a NuWay Partners, d/b/a NuWay Development; J.T. Bramlette; Ralph Brinton; Aaron Wernli; Robert McFadden; Eagle River Mortgage, Inc.; Thomas Sarty; and Joseph Tiedeken*[16]

6.18    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

6.19    At the time each Plaintiff purchased his, her or their Lot, and continuing to the present, the Developer and the Teton Springs Agents have sold and continue to sell Lots in the Subdivision through a common promotional plan (as that term is defined in HUDs Supplemental Information to Part 1710: Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act).

6.20    At the time each Plaintiff purchased his, her or their Lot, the Developer had not filed a "statement of record" and supporting documentation on behalf of the Subdivision with the Interstate Land Sales Division of the U.S. Department of Housing and Urban Development as required by 15 U.S.C. § 1706.

6.21    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision was not registered with the Interstate Land Sales Registration Division of the U.S. Department of Housing and Urban Development as mandated by 15 U.S.C. § 1703 and §1706.

6.22    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "25 lot" exemption (15 U.S.C. § 1702(a)(1) and  24 C.F.R. 1710.5(a)).

---

[16] With regard to Defendant Headwaters Construction Company, only Plaintiffs Janet Wang, Paul Maples, Mai Huynh, and Mike & Penny Park bring this cause of action.

6.23    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "improved lot" exemption (15 U.S.C. § 1702(a)(2) and 24 C.F.R. 1710.5(b)).

6.24    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "evidence of indebtedness" exemption (15 U.S.C. § 1702(a)(3) and  24 C.F.R. 1710.5(c)).

6.25    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "securities" exemption (15 U.S.C. § 1702(a)(4) and  24 C.F.R. 1710.5(d)).

6.26    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "government sales" exemption (15 U.S.C. § 1702(a)(5) and  24 C.F.R. 1710.5(e)).

6.27    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "cemetery lots" exemption (15 U.S.C. § 1702(a)(6) and 24 C.F.R. 1710.5(f)).

6.28    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the

qualifications for exemption under the "sales to builders" exemption (15 U.S.C. § 1702(a)(7) and 24 C.F.R. 1710.5(g)).

6.29    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "industrial or commercial development" exemption (15 U.S.C. § 1702(a)(8) and  24 C.F.R. 1710.5(h)).

6.30    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "100 lot" exemption (15 U.S.C. § 1702(b)(1) and  24 C.F.R. 1710.6).

6.31    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "12 lot" exemption (15 U.S.C. § 1702(b)(2) and  24 C.F.R. 1710.7).

6.32    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "scattered sites" exemption (15 U.S.C. § 1702(b)(3) and 24 C.F.R. 1710.8).

6.33    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "20 acre lots subdivision" exemption (15 U.S.C. § 1702(b)(4) and  24 C.F.R. 1710.9).

6.34    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "single-family residence" exemption (15 U.S.C. § 1702(b)(5) and  24 C.F.R. 1710.10).

6.35    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "manufactured home" exemption (15 U.S.C. § 1702(b)(6) and  24 C.F.R. 1710.11).

6.36    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "intrastate" exemption (15 U.S.C. § 1702(b)(7) and  24 C.F.R. 1710.12).

6.37    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "MSA" exemption (15 U.S.C. § 1702(b)(8) and  24 C.F.R. 1710.13).

6.38    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "inexpensive lots" exemption (24 C.F.R. 1710.14(a)(1)).

6.39    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "limited term leases" exemption (24 C.F.R. 1710.14(a)(2)).

6.40    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "sale to developers" exemption (24 C.F.R. 1710.14(a)(3)).

6.41    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "adjoining lot" exemption (24 C.F.R. 1710.14(a)(4)).

6.42    At the time each Plaintiff purchased his, her or their Lot in the Teton Springs Subdivision, the Teton Springs Subdivision did not qualify as a real estate offering which met the qualifications for exemption under the "sales of leased lots" exemption (24 C.F.R. 1710.14(a)(6)).

6.43    15 U.S.C. §1703(a)(1)(A) states:

It shall be unlawful for an developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails – (1) with respect to the sale or lease of any lot not exempt under section 1403 [15 USCS § 1702]–(A) to sell or lease any lot unless a statement of record with respect to such lot is in effect in accordance with section 1407 [15 USCS § 1706]. . .

6.44    Defendants sold Lots to Plaintiffs when, at such times, Defendants did not have a statement of record filed in accordance with 15 U.S.C. § 1407.

6.45    Pursuant to 15 U.S.C. § 1709(a):

Violations; relief recoverable.  A purchaser or lessee may bring an action at law or in equity against a developer or agent if the sale or lease was made in violation of section 1404(a) [15 USCS § 1703(a)].  In a suit authorized by this subsection, the court may order damages, specific performance, or such other relief as the court deems just fair and equitable.

6.46    As a direct and proximate result of Defendants' violations of 15 U.S.C. § 1703(a)(1)(A), Plaintiffs have suffered damages.

6.47    Pursuant to the Interstate Land Sale Full Disclosure Act, Plaintiffs are entitled to revoke the Lot Sale Contracts and recover any damages, including costs and attorney fees

incidental to the revocation.  Plaintiffs are entitled to be placed in a financial position equal to the financial position they were in prior to entering into the Lot Sale Contracts.

6.48    In the alternative, pursuant to the Land Sale Full Disclosure Act, Plaintiffs are entitled to be awarded such damages resulting from Defendants' violations of 15 U.S.C. § 1703(a)(1)(A) as may be proved at the time of trial of this matter, including costs and attorney fees.

H.    ***Eighth Cause of Action:  Defendants' Violations of the Interstate Land Sale Full Disclosure Act, 15 U.S.C. § 1703(a)(1)(B))*** *against Defendants Teton Springs Golf & Casting Club, LLC; Anthony Vest; NuWay d/b/a NuWay Partners, d/b/a NuWay Development; J.T. Bramlette; Ralph Brinton; Aaron Wernli; Robert McFadden; Eagle River Mortgage, Inc.; Thomas Sarty; Joseph Tiedeken; and All Season Resort Realty, LLC*

6.49    No Defendant furnished Plaintiffs with a property report prior to entering into the Lot Sale Contracts as required by the Section 1703(a)(1)(B) and 1707(a) Act.

6.50    At no time has any Defendant ever furnished Plaintiffs with a property report.

6.51    Defendants' failure to furnish Plaintiffs with a property report at the time Plaintiffs entered into the Lot Sale Contract is a willful violation of the Act (15 U.S.C. §1703(a)(1)(B)).

6.52    Pursuant to the Interstate Land Sale Full Disclosure Act, Plaintiffs are entitled to revoke the Lot Sale Contracts and recover any damages, including costs and attorney fees incident to the revocation.  Plaintiffs are entitled to be placed in a financial position equal to the financial position they were in prior to entering into the Lot Sale Contracts.

6.53    In the alternative, pursuant to the Land Sale Full Disclosure Act, Plaintiffs  are entitled to be awarded such damages resulting from Defendants' violations of 15 U.S.C. § 1703(a)(1)(A) as may be proved at the time of trial of this matter, including costs and attorney fees.

I.       ***Ninth Cause of Action: Defendants' Violations of the Interstate Land Sale Full Disclosure Act, 15 U.S.C. §§ 1703(a)(2)(A)-(C) against Defendants Teton Springs Golf & Casting Club, LLC; Anthony Vest; NuWay d/b/a NuWay Partners, d/b/a NuWay Development; J.T. Bramlette; Ralph Brinton; Aaron Wernli; Robert McFadden; Eagle River Mortgage, Inc.; Thomas Sarty; Joseph Tiedeken; and All Season Resort Realty, LLC***

6.54    Defendants violated 15 U.S.C. § 1703(a)(A), (B) and (C) by using a pattern of interstate communications to sell Lots through the use of a scheme or device which misrepresented the Subdivision:

6.54.1  omitted to disclose material information about the Subdivision;

6.54.2  made untrue statements concerning the nature of the investment in the Subdivision; and

6.54.3  utilized inflated appraisals to induce investors to buy House/Lot Combos in the Subdivision.

6.55    Pursuant to the Interstate Land Sale Full Disclosure Act, Plaintiffs are entitled to revoke the Lot Sale Contracts and recover any damages including costs and attorney fees incident to the revocation.  Plaintiffs are entitled to be placed in a financial position they were in prior to entering into the Lot Sale Contracts.

6.56    In the alternative, pursuant to the Land Sale Full Disclosure Act, Plaintiffs are entitled to be awarded such damages resulting from Defendants' violations of 15 U.S.C. § 1703(a)(A), (B) and (C) as may be proved at the time of trial of this matter, including costs and attorneys' fees.

J.      **Tenth Cause of Action:  Violation of the Idaho Consumer Protection Act, Idaho Code § 48-601 et seq.** *against Defendants Teton Springs Golf & Casting Club, LLC; Anthony Vest; NuWay d/b/a NuWay Partners, d/b/a NuWay Development; J.T. Bramlette; Ralph Brinton; Aaron Wernli; Robert McFadden; Eagle River Mortgage, Inc.; Thomas Sarty; Joseph Tiedeken; and Headwaters Construction Company*[17]

6.57    Plaintiffs, at the time they entered into the Construction Contracts were homeowners and/or residential real property purchasers under Idaho Code § 45-525(2).

6.58    Under the Construction Contract, Headwaters contracted to construct improvements on the Plaintiffs' Lots.  The Construction Contracts were in an amount in excess of $2,000.00.

6.59    Headwaters and the Defendants as agents of Headwaters were required to provide Plaintiffs with a disclosure statement setting forth the information specified in Idaho Code §§ 45-525(2)(a)-(d).

6.60    Headwaters and the Defendants as agents of Headwaters were required to provide Plaintiffs with a disclosure statement setting forth the information specified in Idaho Code §§ 45-525(2)(a)-(d) prior to entering into the Construction Contracts.

6.61    Headwaters and the Defendants as agents of Headwaters failed to provide Plaintiffs with a disclosure statement setting forth the information specified in Idaho Code §§ 45-525(2)(a)-(d) prior to entering into the Construction Contracts.

6.62    Headwaters and the Defendants as agents of Headwaters' failure to provide Plaintiffs with a disclosure statement setting forth the information specified in Idaho Code §§ 45-525(2)(a)-(d) prior to entering into the Construction Contracts constituted an unlawful and deceptive act or practice in trade or commerce under the provisions of Chapter 6, Title 48 of the Idaho Consumer Protection Act pursuant to Idaho Code § 45-525(4).

---

[17]  Only Plaintiffs Janet Wang, Paul Maples, Mai Huynh, and Mike & Penny Park bring this cause of action against Defendant Headwaters Construction Company.

6.63     Headwaters and the Defendants as agents of Headwaters, were required to provide Plaintiffs with a written disclosure statement setting forth the information specified in Idaho Code §§ 45-525(3)(a)-(b) prior to the final payment to Headwaters for the construction on the Lots.

6.64     Headwaters and the Defendants as agents of Headwaters failed to provide Plaintiffs with a written disclosure statement setting forth the information specified in Idaho Code §§ 45-525(3)(a)-(b) prior to the final payment to Headwaters for the construction on the Lots.

6.65     Headwaters and the Defendants as agents of Headwaters' failure to provide Plaintiffs with a written disclosure statement setting forth the information specified in Idaho Code §§ 45-525(3)(a)-(b) prior to the final payment to Headwaters for the construction on the Lots constituted an unlawful and deceptive act or practice in trade or commerce under the provisions of Chapter 6, Title 48 of the Idaho Consumer Protection Act pursuant to Idaho Code § 45-525(4).

6.67     As a direct and proximate cause of Headwaters and the Defendants as agents of Headwaters' unlawful and deceptive acts or practices in trade or commerce, Plaintiffs have suffered damages.

6.68     Pursuant to the Idaho Consumer Protection Act, Idaho Code § 48-608(1) Plaintiffs hereby void their respective Construction Contracts.

6.69     In the alternative, pursuant to the Idaho Consumer Protection Act, Idaho Code § 48-608(1), Plaintiffs hereby seek to recover their actual damages incurred as a result of Headwaters and the Defendants as agents of Headwaters' unlawful and deceptive acts or

practices in trade or commerce.  The amount of such damages shall be proved at trial, including punitive damages as authorized by the Idaho Consumer Protection Act.

## VII.    DAMAGES

7.1     As a direct and proximate cause of the conduct outlined above, Plaintiffs have suffered immense economic damages.  Plaintiffs incurred debts exceeding $26,000,000 for funds which were then paid to Defendants.  Plaintiffs lost expectation interest damages based on the representations of "instant equity."  Plaintiffs' credit has been ruined, which has caused an inability to obtain financing or severe related financial difficulties.  Plaintiffs lost the initial monies paid to Defendants Teton Springs and NuWay.  Plaintiffs lost monies through closing costs.  Plaintiffs' damages include mortgage and insurance payments on the houses.  Plaintiffs' damages include utility payments and general upkeep of the houses.  Plaintiffs have suffered and will continue to suffer these and other economic damages in an amount to be proven at trial.

7.2     As a direct and proximate cause of the conduct outlined above, Plaintiffs have suffered and will continue to suffer mental anguish damages.

7.3     As a direct consequence of Defendants' unlawful actions, Plaintiffs were required to obtain the legal services of William Thomas and Meyerson Cagle, P.C., to represent them in their claims against Defendants.  Plaintiffs are entitled to recover their attorney fees, reasonable expert witness fees and other costs incurred in this claim under 15 U.S.C. § 1709(c) and pursuant to Idaho Code § 48-608(4) and §§ 12-120 and 121 and any other applicable law.

7.4     In order to punish and deter the grossly negligent and intentionally tortious conduct as outlined below, Plaintiffs request an award of punitive damages to the extent allowed by law.

VIII.   PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiffs request the following relief from this Court:

1.      Judgment against Defendants individually and/or jointly and severally;

2.      An award of damages in an amount to be determined at trial;

3.      An award of pre-judgment interest;

4.      An award of post-judgment interest;

5.      Pursuant to and following an evidentiary hearing under Idaho Code § 6-1604, an award of punitive and/or exemplary damages to the extent allowed at law or in equity;

6.      An award of reasonable attorney fees and costs as allowed by law or equity;

7.      In the alternative, rescission of the Lot Sales Contracts and Construction Contracts; and

8.      All other remedies in law or equity to which Plaintiffs may be entitled.

IX.     JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

Respectfully submitted,

_____
MEYERSON CAGLE, P.C.
JEFF M. MEYERSON (*pro hac vice*)
Texas Bar No. 00788051
CHRIS G. CAGLE (*pro hac vice*)
Texas Bar No. 24048905
MARK R. MCLEAN (*pro hac vice*)
Texas Bar No. 24062882
**Lead Counsel for Plaintiffs**

/s/ Ron Kerl
_____
COOPER & LARSEN
RON KERL
Idaho Bar No. 1768
**Local Counsel for Plaintiffs**

## CERTIFICATE OF MAILING AND SERVICE

I hereby certify that on this 2 day of October, 2009, I caused to be sent via electronic means delivery of this document to the following persons:

*Via ECF*
Amy Potter
Moulton Law Office
P.O. Box 631
Driggs, Idaho 83422
Attorney for Defendants Teton Springs Golf & Casting Club, LLC, Headwaters Construction Co., & All Season Resort Realty, LLC

*Via ECF*
Phil Collaer
Anderson, Julian & Hull, LLP
250 South Fifth Street, Suite 700
Boise, Idaho 83707
Attorney for Defendants All Season Resort Realty, LLC and Sarah Anderson

*Via ECF*
Sam Johnson
Johnson & Monteleone, L.L.P.
405 South Eigth Street, Suite 250
Boise, Idaho 83702
Attorney for Defendant Thomas Sarty

*Via ECF*
Donald Carey
Quane Smith LLP
2325 West Broadway, Suite B
Idaho Falls, Idaho 83402
Attorney for Settling Defendants Rivers Edge Appraisal Service, LLP and Craig Smith

*Via ECF*
Rich Capriola
Weinstock & Scavo, P.C.
2405 Piedmont Road, Suite 300
Atlanta, Georgia 30305
Attorney for Defendants Anthony Vest and Teton Springs Golf & Casting Club, LLC

*Via Regular Mail*
Mr. Blaine Russell, Registered Agent
Eagle River Mortgage, Inc.
439 East Shore Drive, Suite 110
Eagle, Idaho 83616
*Pro Se Defendant*

*Via Regular Mail*
Joe Tiedeken
5042 Summer Drive
Sylvania, Ohio 46560
*Pro Se Defendant*

___/s/ Ron Kerl_____
Ron Kerl