UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT READ, et al.,<br><br>　　Plaintiffs,<br><br>vs.<br><br>TETON SPRINGS GOLF & CASTING CLUB, LLC, et al.,<br><br>　　Defendants.<br><hr><br>CHRIS HAMABE, et al.<br><br>　　Plaintiffs,<br><br>vs.<br><br>TETON SPRINGS GOLF & CASTING CLUB, LLC, et al.,<br><br>　　Defendants. | Case No.: CV 08-CV-00099<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>Defendants' Motion to Dismiss Punitive Damage Claims<br>　　**(Docket No. 283)**<br><br>Plaintiffs' Amended Motion for Leave to File Third Amended Complaint<br>　　**(Docket No. 368)**<br><br>Teton Springs' Motion to Quash Subpoenas and for Protective Order<br>　　**(Docket No. 300)**<br><br>All Seasons' Motion for Leave to File Supplemental Affidavit<br>　　**(Docket No. 374)**<br><br>Teton Springs' Motion for Leave to File Supplemental Affidavit<br>　　**(Docket No. 376)**<br><br>Defendants' Motion to Strike Affidavit of Mark McLean<br>　　**(Docket No. 327)**<br><br>Plaintiffs' Motion to Compel Discovery and for Sanctions - All Seasons<br>　　**(Docket No. 367)**<br><br>Plaintiffs' Motion to Compel Discovery and for Sanctions - Teton Springs<br>　　**(Docket No. 377)** |

**MEMORANDUM DECISION AND ORDER - 1**

Currently pending before the Court are 21 motions, 14 of which are scheduled for hearing on July 7, 2010. Those 14 motions are, in turn, organized into six consolidated motions by, for the most part, subject-matter. Consistent with the Court's June 4, 2010 Docket Text Notice, the Court will take this opportunity to resolve eight of the pending motions (speaking to four of the six consolidated motions) before July 7, 2010 in an attempt to focus the parties and the Court on the larger, more substantive issues during the hearing. *See* 6/4/10 DTN (Docket No. 465). Therefore, having carefully reviewed the record and otherwise being fully advised, the Court issues the following Memorandum Decision and Order:

## BACKGROUND

While there are many moving parts to this action, since the beginning, the general backdrop to Plaintiffs' claims relate to the development, marketing, purchase, sale, and construction of 28 lots and homes in the "Teton Springs" real estate development in Victor, Idaho. *See, e.g.*, Mem. in Supp. of Pls.' Motion for Leave to File Pls.' Third Am. Compl., p. 2 (Docket No. 303). The nuanced specifics of such claims are not necessarily important to the Court's resolution of several motions now orbiting the more significant dispositive motions that are currently pending; as a consequence, particular facts will not be discussed in detail here. Suffice it to say, as purchasers of the above-referenced 28 lots and homes, Plaintiffs take issue with the alleged manner in which Defendants' marketed and sold those properties. Defendants, in turn, deny these allegations, contending further that Plaintiffs themselves were integral players in an investment scheme that ultimately backfired.

## ANALYSIS

In triaging the various motions set for hearing on July 7, 2010, the undersigned attempted to consider up-front those motions capable of resolution on the briefing alone - the low-hanging

**MEMORANDUM DECISION AND ORDER - 2**

fruit, if you will. While not discounting the importance of such motions, with their early consideration and disposition, it is the Court's hope that the scheduled hearing can be devoted mostly to the core issues making up the parties' respective claims and defenses. With this in mind, the following motions are resolved here:

- Defendants' Motion to Dismiss Punitive Damage Claims (Docket No. 283);

- Plaintiffs' Amended Motion for Leave to File Third Amended Complaint (Docket No. 368);

- Teton Springs' Motion to Quash Subpoenas and for Protective Order (Docket No. 300);

- All Seasons' Motion for Leave to File Supplemental Affidavit (Docket No. 374);

- Teton Springs' Motion for Leave to File Supplemental Affidavit (Docket No. 376);

- Defendants' Motion to Strike Affidavit of Mark McLean (Docket No. 327);

- Plaintiffs' Motion to Compel Discovery and for Sanctions - All Seasons (Docket No. 367); and

- Plaintiffs' Motion to Compel Discovery and for Sanctions - Teton Springs (Docket No. 377).

**I. Defendants' Motion to Dismiss Punitive Damage Claims (Docket No. 283)**

In their Second Amended Complaints, Plaintiffs include a claim for punitive damages. *See* Mem. in Supp. of Mot. to Dismiss Pun. Dmgs. Claims, p. 1 (Docket No. 283, Att. 1). Defendant All Seasons Resort Realty ("All Seasons") argues that (1) punitive damages are not allowed relative to Plaintiffs' federal claims under the Interstate Land Sales Full Disclosure Act

**MEMORANDUM DECISION AND ORDER - 3**

(*see id.* at p. 2) and (2) as to Plaintiffs' state law claims, punitive damages cannot be asserted without first making an evidentiary showing under I.C. § 6-1604 (*see id.* at pp. 2-4). Plaintiffs' opposition does not address the specific arguments raised within All Seasons' Motion, but, instead, takes the form of another effort to amend their Complaints. *See* Pls.' Opp. to Mot. to Dismiss Pun. Dmgs. Claims, p. 2 (Docket No. 301) ("Defendants' motion will likely be determined by the outcome of Plaintiffs' Motion for Leave to File Plaintiffs' Third Amended Complaints [Docket No. 302], which accompanies this response.").

The Court will therefore deny Defendants' Motion to Dismiss Punitive Damage Claims (Docket No. 283) as moot, choosing instead to address the merits of this specific argument in the context of Plaintiffs' Motion for Leave to File Third Amended Complaint (Docket No. 302). Similarly, Defendant Teton Springs' Golf and Casting Club's ("Teton Springs") Joinder in All Seasons' Motion (Docket No. 286) is also denied as moot.

## II. Plaintiffs' Amended Motion for Leave to File Third Amended Complaint (Docket No. 368)

It is obvious this case has evolved over time. Since February 2008 when the action was first filed (Docket No. 1), it has been assigned and/or referred to three federal judges, at least one law firm is no longer in the fray, and the pleadings have undergone a number of amendments. On January 23, 2009, Plaintiffs filed their Amended Complaint (Docket No. 152). On August 11, 2009, Chief U.S. District Judge B. Lynn Winmill granted Plaintiffs' Motion for Leave to File (and deemed filed) Plaintiffs' Second Amended Complaint (Docket No. 268) - the current, operative Complaint. Plaintiffs then moved for leave to file their Third Amended Complaints (Docket No. 302) on October 2, 2009 and, following the briefing related to those amendment efforts, submitted an Amended Motion for Leave to File Plaintiffs' Third Amended Complaints

**MEMORANDUM DECISION AND ORDER - 4**

(Docket No. 368) on February 17, 2010. Within this latter Amended Motion (Docket No. 368), Plaintiffs attempt to explain the reason for yet another amendment, stating:

> The proposed amended complaints assert the same causes of action, with greater detail of factual support and legal analysis, as those contained in [the original, proposed Third Amended Complaints] Docket Nos. 305-306. Two additional claims are included . . . . These additional, independent claims are brought solely on behalf of Plaintiff Paul Maples. They are added after the depositions of Paul Maples and Defendants provided [sic] adequate factual support for the claims. The other claims asserted are the same as those asserted in Plaintiffs' prior proposed Third Amended Complaints, with greater factual support and legal analysis, especially with regard to the multiple statutory violations making the basis of Plaintiffs' claims of negligence per se.

*See* Pls.' Am. Mot. for Leave to File Pls.' Third Am. Compls., p. 2 (Docket No. 368). Given the procedural circumstances and record thus far, the Court fails to see the merit in offering an *amendment* to Plaintiffs' already-pending Motion for Leave to File Third Amended Complaints (Docket No. 302) - in essence, a new Motion for Leave to File Plaintiffs' Fourth Amended Complaint(s).

There is no question that Plaintiffs must contend with an expired deadline to amend pleadings. *See* 10/6/08 CMO (Docket No. 113) (setting December 29, 2008 deadline). While it is true that Judge Winmill has already permitted an amendment to take place after December 29, 2008, the Court cannot ignore the fact that Plaintiffs' Amended Motion for Leave to File Third Amended Complaint (Docket No. 368) was filed one year, one month, and 19 days after the ordered deadline. The Court understands that, with the change in counsel and benefit of additional discovery, arguments can be made for allowing a party to amend their pleadings beyond a given date. However, there must be a time when the boundaries of a Complaint's allegations are defined once-and-for-all. Simply put, the reasons offered by Plaintiffs in an

**MEMORANDUM DECISION AND ORDER - 5**

attempt to justify a subsequent amendment to their own previous attempt to amend their pleadings (also submitted beyond the December 29, 2008 deadline) are not persuasive.

For example, Paul Maples has been a named litigant since Plaintiffs first filed this action on February 25, 2008. To suggest that his claims could only have been discerned after *he* was deposed is not entirely believable (he was always available, presumably, to his own counsel) and cannot amount to good cause to amend one's complaint - particularly when it is 14 months late. As Defendant Teton Springs put it:

> [T]here is absolutely no reason his individual claims could not have been "discovered" earlier by his own counsel simply talking to him. His claims are based upon statements that he says Sarah Anderson made to him and not upon any information discovered from any other source.

*See* Opp. to Pls.' Am. Mot. for Leave to File Pls.' Third Am. Compls., p. 3 (Docket No. 408). The Court agrees. Plaintiff Maples' claims will not be expanded by those asserted within Plaintiffs' Amended Motion for Leave to File Plaintiffs' Third Amended Complaints.

Moreover, Plaintiffs repeatedly state that the proposed amendments specific to their negligence per se and gross negligence claims are offered in an attempt to provide more factual support and analysis. *See, e.g.*, Reply in Supp. of Pls.' Am. Mot. for Leave to File Pls.' Third Am. Compls., p. 3 (Docket No. 424) ("The live pleadings of these matters were amended post-discovery to clarify Plaintiffs' claims and provide Defendants and this Court more extensive factual background and analysis. . . . [T]he claims did not change. Only the facts supporting them were outlined in greater detail."). Plaintiffs' attempt to characterize their amendments as somehow a benefit to Defendants and this Court is, again, hard to accept. If it is true that these facts exist to support those claims already asserted within Plaintiffs' proposed Third Amended

**MEMORANDUM DECISION AND ORDER - 6**

Complaint (and those claims remain at issue), there is no obvious reason why those same facts cannot be presented at trial. Likewise, it is up to counsel at trial to present any related (and admissible) legal analyses to the fact-finders. In other words, aside from possibly trying to offer additional commentary on the viability of Plaintiffs' claims, the Court sees no clear need to have such "clarification" and "analyses" in the underlying pleading when, according to Plaintiffs, the foundation for such claims already exists. Plaintiffs' Amended Motion for Leave to File Third Amended Complaint (Docket No. 368) is denied.

The Court's position here is not an attempt to hamstring Plaintiffs' presentation of evidence but, rather, to reach a point of equilibrium from which the parties can prepare for trial. Defendants are entitled to know the claims asserted against them; right now, however, the state of Plaintiffs' pleadings is similar to a moving target that must come to a rest before the action can proceed. Therefore, the Court's next task is to take up at the hearing Plaintiffs' original Motion for Leave to File Third Amended Complaint (Docket No. 302).[1]

---

[1] There remains an issue as to Defendant All Seasons' Motion to Dismiss Plaintiffs' Sixth Cause of Action (Docket No. 210). On June 8, 2009, All Seasons moved to dismiss Plaintiffs' sixth cause of action - negligent misrepresentation - arguing that "Idaho does not recognize negligent misrepresentation in this context." *See* Defs.' Mem. in Supp. of Mot. to Dismiss, p. 2 (Docket No. 210, Att. 1). Plaintiffs then moved for leave to file their Second Amended Complaint (Docket No. 220) which Judge Winmill granted (Docket No. 268). As its sixth cause of action, Plaintiffs' Second Amended Complaint states a negligence claim, not a negligent misrepresentation claim. This Court issued a DEO on August 27, 2009, requesting the parties' input as to the status of All Seasons' Motion in light of Judge Winmill's ruling (Docket No. 278). In response, All Seasons argued that their Motion was not moot, claiming that the allegations supporting Plaintiffs' negligence claim nonetheless "describe a claim which is based on negligent misrepresentation." *See* Defs.' Resp. (Docket No. 281). Plaintiffs did not respond; however, Plaintiffs moved for leave to file their Third Amended Complaint on October 2, 2009 (Docket No. 302). Again, the proposed Third Amended Complaint has no negligent misrepresentation claim, only negligence, negligence per se, and gross negligence claims. All Seasons again opposes these amendments as negligent representation claims in disguise. *See* Defs.' Mem. in Opp. to Mot. for Leave to File Pls.' Third Am. Compls., pp. 19-20 (Docket No. 316). Without submitting any additional paperwork, the Court requests that All Seasons and Plaintiffs be prepared to discuss the issues specific to All Seasons' dismissal arguments as they are now framed within Plaintiffs' proposed Third Amended Complaint.

**MEMORANDUM DECISION AND ORDER - 7**

**III.    Teton Springs' Motion to Quash Subpoenas and for Protective Order
         (Docket No. 300)**

Teton Springs committed to create the Teton Springs Foundation (the "Foundation") and to donate 1% of its sale proceeds to the Foundation to benefit community charities.  *See* Teton Springs' Mot. to Quash and for Prot. Order, p. 2 (Docket No. 300).  According to Teton Springs:

> This commitment is reflected in Teton Springs' CCRs and Teton Springs has donated 1% of its sales to the Foundation since its creation.  The Foundation has given tens of thousands of dollars to local charities to benefit the Teton Valley community.

*See id*.  Among their discovery requests, Plaintiffs have demanded information regarding the Foundation, including requests for production upon Teton Springs, as well as subpoenas upon (1) the Foundation,[2] (2) a separate charitable entity known as the Teton Valley Foundation, and (3) Jon Pinardi.[3]  *See id*. at p. 3.  Teton Springs claims that these discovery requests "seek not only confirmation that 1% of Teton Springs' sale proceeds from Plaintiffs' purchases were donated to the Foundation, but they also broadly seek information about all of the Foundation's financial information and all of its charitable grant recipients."  *See id*.

Claiming that the information sought is outside the scope of discovery, unduly burdensome, not relevant, over broad, and confidential, Teton Springs seeks to (1) quash the subpoenas directed to the Foundation, the Teton Valley Foundation, and Jon Pinardi, and (2) secure a protective order prohibiting Plaintiffs from contacting any of the Foundation's grant recipients without further court order.  *See id*. at pp. 6-12.  Plaintiffs naturally disagree on these

---

[2] Teton Springs objects to the manner in which the Foundation was served with the subpoena for information.  *See* Teton Springs' Mot. to Quash and for Prot. Order, p. 6 (Docket No. 300) ("The Teton Springs Foundation subpoena was not properly served.").

[3] Although originally named as a Plaintiff in this action, Jon Pinardi was dismissed from this action on or around September 2, 2008.  *See* 9/2/08 Order (Docket No. 69).

**MEMORANDUM DECISION AND ORDER - 8**

substantive points, while questioning Teton Springs' standing to even challenge these subpoenas. *See* Pls.' Opp. to Teton Springs' Mot. to Quash and for Prot. Order, pp. 9-19 (Docket No. 300).

  A.  **Motion to Quash Subpoenas**

As an initial matter, this Court must consider whether Teton Springs has standing to move to quash the subpoenas served on the Foundation, the Teton Valley Foundation, and Jon Pinardi. "'The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought.'" *See U.S. Bank Nat. Ass'n v. James*, 264 F.R.D. 17, 18-19 (D. Me. 2010) (quoting *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997)); *see also Jacobs v. Connecticut Cmty. Technical Colleges*, 258 F.R.D. 192, 194-195 (D. Conn. 2009) ("Ordinarily, a party does not have standing to move to quash a subpoena served on a third party. Rather, only the person or entity to whom a subpoena is directed has standing to file a motion to quash."). Here, it appears undisputed that the Foundation, Teton Valley Foundation, and Jon Pinardi are separate entities, distinct from Teton Springs itself. Yet, it is Teton Springs that is offering the objection to the subpoenas. Without disagreeing with this fact, Teton Springs argues that (1) "Plaintiffs clearly expected Moulton Law Office to accept service and respond to the subpoenas . . . ."; (2) Teton Springs is the only party in a position to raise objections; and (3) the subpoenas seek confidential information. *See* Reply in Supp. of Teton Springs' Mot. to Quash and for Prot. Order, pp. 2-3 (Docket No. 320). These arguments are not very compelling.

First, the Court is satisfied that Plaintiffs understood Sean Moulton (counsel for Teton Springs) to be the Foundation's Director based upon existing tax records; indeed, after claiming that "Sean is not and has never been a director of the Foundation", Amy Potter (also counsel for

**MEMORANDUM DECISION AND ORDER - 9**

Teton Springs) corrected herself, stating: "You are correct that Sean was a director of the Teton Springs Foundation in 2006, but he has not been since. We are contacting the president of the Foundation to inquire whether we are authorized to accept service." *See* Pls.' Opp. to Teton Springs' Mot. to Quash and for Prot. Order, pp. 6-7 (Docket No. 300). Still, according to Plaintiffs, "the most recent IRS records in Plaintiffs' possession, from 2007, indicate [Mr. Moulton] is still a Director." *See id*. at p. 8. Regardless, even if true, any expectation that Plaintiffs had with respect Moulton Law Office accepting service of the Foundation's subpoena does not automatically morph Teton Springs into a party with standing to object to that subpoena. Teton Springs provides no contrary authority.

Second, the Court recognizes that the burden of moving to quash a subpoena can be significant - particularly in the case of non-profit charities. However, such realities do not operate to confer standing upon an entity that otherwise has none. The parties upon whom subpoenas have been served are those parties who are tasked with either responding or objecting to the same. Here, there is no dispute that those subpoenaed parties are not Teton Springs.

Third, Teton Springs' argument concerning the confidential nature of the information sought is not convincing. *See* Teton Springs' Mot. to Quash and for Prot. Order, p. 11 (Docket No. 300) ("The subpoena to the Teton Valley Foundation also seeks information regarding payments and donations to it. This sensitive financial information is confidential and irrelevant to the pending case."). The Court agrees that the requested information is financial in nature, but, again, that by itself does not mean that it is also confidential; to be sure, Plaintiffs do not go on to explain how or why this information is, in fact, confidential and/or privileged - other than to simply state that it is confidential. *See supra* at p. 9. It should also be pointed out that this

**MEMORANDUM DECISION AND ORDER - 10**

case is all about financial information - appraisals, loan applications, commissions, etc. To suggest, as Teton Springs seems to do, that financial information, generally, attaches to it an aura of confidentiality and privilege would render this and many other commercial litigation cases impossible to resolve. Without more, it cannot be said that the subpoenaed information is privileged.

These reasons combine to dismiss Teton Springs' arguments and, likewise, deny this portion of Teton Springs' Motion to Quash (Docket No. 300). It should also be said that, at this time, the Court cannot agree with Teton Springs' argument that a seller can use its sale proceeds any way it wants, apparently without any regard to alleged prior representations of actually donating a certain percentage of sale proceeds. On this issue, Teton Springs repeatedly states:

> As explained in the motion, the seller's proceeds of any sale belong to the seller and the seller can use those proceeds as he sees fit. The seller's use of his sale proceeds are at his sole discretion and need not be reported to the buyer. Documents regarding the disposition of Teton Springs' sales proceeds are simply not relevant to this action.

*See* Reply in Supp. of Teton Springs' Mot. to Quash and for Prot. Order, pp. 4-5 (Docket No. 320); *see also* Teton Springs' Mot. to Quash and for Prot. Order, p. 7 (Docket No. 300). If a seller makes a representation concerning a sale's proceeds to assist in that sale, the Court considers whether those representations were carried out to be relevant - at least during 2006. The Court's position in this respect should not be interpreted to mean that such information is admissible at trial - an issue to be taken up with U.S. District Judge Edward J. Lodge (particularly with respect to Plaintiffs' alleged non-reliance on such representations and the apparent fact that no liens have ever been filed) at the appropriate time. Until then, based upon the factual and procedural record now before the Court, the subpoenas will not be quashed

**MEMORANDUM DECISION AND ORDER - 11**

outright; they will, however, be limited only to the year 2006 (or, more specifically, the period of time spanning Plaintiffs' purchase of lots/homes in the Teton Springs real estate development).

### B. Motion for Protective Order

Consistent with their Motion to Quash, Teton Springs also seeks a protective order, prohibiting Plaintiffs from contacting any of the Teton Springs Foundation's grant recipients. *See* Teton Springs' Mot. to Quash and for Prot. Order, p. 12 (Docket No. 300); *see also* Reply in Supp. of Teton Springs' Mot. to Quash and for Prot. Order, p. 8 (Docket No. 320). Again, this Court considers the contributions to the Foundation to be relevant. *See supra* at p. 11. Further, because Teton Springs admits that "[t]he Foundation has given tens of thousands of dollar to local charities to benefit the Teton Valley community" (*see id*. at p. 8), those donations and their recipients are, in the Court's mind, capable of leading to the discovery of admissible evidence under FRCP 26.

Still, such information is presumably available from the materials produced via Plaintiffs' subpoena to the Foundation, such that a shot-gun approach to the various charities in the Teton Valley is not needed.[4] Once Plaintiffs determine which charities were/are on the receiving end of the Foundation's donations, they can then research the nature of those charities, including their mission, their work in the community, and their officers and directors. To blindly send out subpoenas to non-party charities, while conceivably accomplishing the same objective, could also unfairly paint Teton Springs in a negative light, while adding to the already-significant litigation expenses among all parties. Therefore, consistent with this Court's inherent authority

---

[4] Given Mr. Moulton's involvement (at least at some time) in the Teton Valley Foundation, Plaintiffs' subpoena to the Teton Valley Foundation is not affected by any protective order entered here.

**MEMORANDUM DECISION AND ORDER - 12**

to manage pre-trial matters, including discovery, this portion of Teton Springs' Motion for Protective Order is granted.

To summarize, Teton Springs' Motion to Quash Subpoenas and for Protective Order is granted, in part, and denied, in part. The subpoenas will not be quashed, but will be limited only to the period of time spanning Plaintiffs' purchase of lots/homes in the Teton Springs real estate development - whatever that may be. Plaintiffs, however, will not be permitted to issue additional subpoenas to charities throughout the Teton Valley (other than the Teton Valley Foundation subpoena) without first obtaining leave of Court to do so.

### IV. All Seasons' Motion for Leave to File Supplemental Affidavit of Phillip J. Collaer (Docket No. 374)

In conjunction with its reply memorandum in support of its Motion for Summary Judgment Re: Investment Losses (Docket No. 338), All Seasons seeks to submit the supplemental Affidavit of attorney Phillip J. Collaer, arguing that the additional information "provides clarification" on the types of damages Plaintiffs previously claimed - an issue integral to All Seasons' related Motion for Summary Judgment Re: Investment Losses. *See* Mem. in Supp. of Defs.' Mot. for Leave to File Supp. Aff. of Phillip J. Collaer, p. 2 (Docket No. 374, Att. 1). Specifically, through Mr. Collaer's Affidavit, All Seasons seeks to include (1) Plaintiffs' Third Supplemental Rule 26 Disclosure, and (2) deposition transcripts for certain Plaintiffs who may have already entered into settlement negotiations with First Horizon Home Loan Corporation. *See id.*; *see also* Supp. Aff. of Phillip J. Collaer, ¶¶ 2-4 (Docket No. 374, Att. 2).

Plaintiffs object to Mr. Collaer's supplemental Affidavit, arguing that (1) FRE 408 specifically excludes evidence of settlement agreements to attack damages, and (2) the

**MEMORANDUM DECISION AND ORDER - 13**

referenced Rule 26 Disclosures have since been amended.  *See* Pls.' Opp. to Defs.' Mot. for Leave to File Supp. Aff. of Phillip J. Collaer, pp. 2-5 (Docket No. 389).

The Court agrees with All Seasons.  First, Plaintiffs do not dispute that the Rule 26 Disclosures included within Mr. Collaer's supplemental Affidavit were current as of the filing of the at-issue Motion.  Not only does Plaintiffs' subsequent supplementation of their Rule 26 Disclosures reflect an obvious response to All Seasons' argument, Plaintiffs offer no reason why original discovery responses are inadmissible.  In any event, Plaintiffs succeed in notifying the Court of their amendment.  Second, the settlement materials attached as exhibits to certain Plaintiffs' depositions are not being offered as conclusive evidence of liability or damages, but "to ascertain whether the Plaintiffs involved in the settlement have any right to recover."  *See* Reply in Supp. of Defs.' Mot. for Leave to File Supp. Aff. of Phillip J. Collaer, p. 4 (Docket No. 419); *see also* Fed. R. Evid. 408.  The Court sees little benefit in disallowing materials that may suggest a litigant is not entitled to recover the damages they claim.  All Seasons' Motion for Leave to File Supplemental Affidavit of Phillip J. Collaer (Docket No. 374) is granted, recognizing that what is being allowed here is for the limited purpose of considering All Seasons' Motion for Summary Judgment Re: Investment Losses.  Such a finding is not the equivalent of admissibility at trial; those issues are to be taken up with Judge Lodge.

### V.    Teton Springs' Motion for Leave to File Supplemental Affidavit (Docket No. 376)

Through the supplemental Affidavit of attorney Amy Potter, Teton Springs seeks to provide additional deposition excerpts in an attempt to "clarify the testimony offered by Plaintiffs."  *See* Teton Springs' Mot. for Leave to File Supp. Aff., p. 2 (Docket No. 376).

**MEMORANDUM DECISION AND ORDER - 14**

Although disagreeing with Teton Springs' argument, "pursuant to the doctrine of optional completeness and to provide the Court with all available resources, Plaintiffs [nonetheless] attach the full (condensed) deposition transcripts" of the relevant deponents. *See* Pls.' Resp. to Mot. for Leave to File Supp. Aff., p. 2 (Docket No. 388). Teton Springs has no objection to these complete transcripts being part of the record. *See* Reply in Supp. of Teton Springs' Mot. for Leave to File Supp. Aff., pp. 2-3 (Docket No. 421). Therefore, Teton Springs' Motion for Leave to File Supplemental Affidavit (Docket No. 376) is granted to the extent the full deposition transcripts have not been submitted into the record.

## VI.     Defendants' Motion to Strike Affidavit of Mark McLean (Docket No. 327)

Contemporaneous with their reply memorandum in support of their Motion for Leave to File Third Amended Complaint (Docket No. 302), Plaintiffs submit a second Affidavit from Attorney Mark McLean (the first, accompanied Plaintiffs' moving paperwork). *See* Aff. of Mark McLean in Supp. of Pls.' Mot. for Leave to File Pls.' Third Am. Compls. (Docket No. 322, Att. 1). All Seasons objects, claiming primarily that a party cannot continue to file factual affidavits after a response is filed. *See* Defs.' Mot. to Strike Aff. of Mark McLean, p. 3 (Docket No. 327).

The parties agree that an affidavit submitted with a party's reply memorandum is allowed when responding to arguments raised within an opposition; affidavits raising altogether new facts and/or argument, however, should not be permitted. All Seasons and Plaintiffs predictably take opposing sides on this issue when speaking to Mr. McLean's November 17, 2009 Affidavit. The balance likely lies somewhere in between.

Consistent with the Court's handling of other issues related to supplemental affidavits (*see supra* at pp. 13-15) and erring on the side of a more complete record, the Court denies

**MEMORANDUM DECISION AND ORDER - 15**

Defendants' Motion to Strike Affidavit of Mark McLean (Docket No. 327). The exhibits offered within Mr. McLean's Affidavit include mostly deposition excerpts, but also correspondence among counsel, alleged marketing materials (as of March 7, 2009), and documents filed with Idaho's Secretary of State. The Court is confident that these materials' inclusion into the record will not unfairly affect (one way or the other) its consideration of Plaintiffs' pending Motion for Leave to File Third Amended Complaint.

## VII.  Plaintiffs' Motion to Compel Discovery and for Sanctions - All Seasons (Docket No. 367)

All Seasons apparently attached an email - the "Axiom" email - in response to Plaintiffs' efforts to amend their pleadings. However, throughout discovery (including the mirroring of a hard drive which, allegedly, uncovered additional documents), the "Axiom" email has never been located or separately produced, prompting Plaintiffs to believe that an untapped reservoir of documents remains. *See* Pls.' Mot. to Compel Disc. and for Sanctions Against All Seasons, p. 12 (Docket No. 367). Plaintiffs ask that (1) All Seasons identify the source of the "Axiom" e-mail; (2) All Seasons identify all hard drives which may contain responsive documents; (3) it be allowed to inspect all hard drives which may contain responsive documents; (4) it be awarded attorneys' fees, accounting for the time spent writing correspondence on this issue; (5) it be awarded the costs incurred in inspecting and mirroring any hard drives; (6) an order be entered authenticating documents produced from the first mirror; and (6) the court give spoliation instructions to the jury. *See id*. at pp. 14-15.

To the extent Plaintiffs' suggest wrongdoing, All Seasons unequivocally disagrees. *See* Opp. to Mot. to Compel Disc. And for Sanctions Against All Seasons, pp. 2-7 (Docket No. 379). From the Court's perspective there appears to be little doubt that, but for the existence of the

**MEMORANDUM DECISION AND ORDER - 16**

"Axiom" email and an understanding of its genesis, there is no real argument that All Seasons has somehow been dodgy in its obligations to respond to discovery. The fact of the matter appears to be that All Seasons (when considering the involvement of other counsel) has satisfied its responsibilities of responding to Plaintiffs' discovery in good faith - it has produced all responsive documents and offered for mirroring the hard drive Sarah Anderson used in the relevant time frame. Taking All Seasons' counsel at his word, as this Court will do on the record, compels a finding in favor of All Seasons here.

Still, to the extent it has not already done so, All Seasons is ordered to identify (1) the source of the "Axiom" email, and (2) all other hard drives containing responsive documents in All Seasons' possession.[5] In this very limited respect, Plaintiffs' Motion to Compel Discovery and for Sanctions - All Seasons (Docket No. 367) is granted. In all other respects, Plaintiffs' Motion to Compel Discovery and for Sanctions - All Seasons (Docket No. 367) is denied.

## VII.    Plaintiffs' Motion to Compel Discovery and for Sanctions - Teton Springs (Docket No. 377)

There is little dispute among the parties that the earliest email appearing to originate from Anthony Vest's hard drive is dated July 24, 2007. According to Teton Springs' counsel, this is because Mr. Vest's old computer became infected with a virus in 2007 and was completely destroyed; therefore, any production of materials originating from Mr. Vest's computer, necessarily came from the computer that replaced the infected/destroyed computer in 2007. However, at his deposition, Mr. Vest was unclear when his computer became infected -

---

[5] In the event there are hard drives in existence that have not been examined for responsive documents, All Seasons is further ordered to search those hard drives and immediately produce any responsive documents no later than July 12, 2010.

**MEMORANDUM DECISION AND ORDER - 17**

testifying that it took place in the 2005 or 2006 time frame.  *See* Pls.' Mot. to Compel Disc. and for Sanctions Against Teton Springs, p. 6 (Docket No. 377).  In any event, this second computer is still in Mr. Vest's possession.  *See id*. at p. 7.  If true, Plaintiffs argue that one to two years' worth of unproduced emails should exist on the hard drive, currently in Mr. Vest's possession.

In response, and to his credit, Mr. Vest testified that he "believe[d] that [his] computer was replaced in the summer of 2006."  *See* Decl. of Anthony Vest in Supp. of Teton Springs' Opp. to Mot. to Compel Disc. and for Sanctions Against Teton Springs, ¶ 7 (Docket No. 416, Att. 1).  Therefore, by what appears to be Mr. Vest's own admission, he has had his current computer since (or around) the summer of 2006.  Yet, the first email produced from Mr. Vest is dated July 24, 2007 (*see supra* at p. 17), leaving a year's worth of email potentially on his current computer.

Although Teton Springs argues that Mr. Vest has diligently searched the deleted, sent, and in-boxes of his current computer, as well as all electronic folders on his computer and all hard copy files in his possession, it is hard to believe that no emails exist from such an involved player from the summer of 2006 to the summer of 2007 - yet, that is what Teton Springs wants Plaintiffs and this Court to accept.

Without suggesting any misconduct on Teton Springs' or Anthony Vest's behalf, the record shows an unexplained absence of emails from Mr. Vest's computers between the summer of 2006 and the summer of 2007.  An explanation could be provided by a forensic examination of Mr. Vest's current hard drive.  In this limited respect, Plaintiffs' Motion to Compel Discovery and for Sanctions - Teton Springs (Docket No. 377) is granted.  That is, Teton Springs is ordered to identify all hard drives used by Mr. Vest in association with the Teton Springs real estate

development since January 1, 2004 and produce those available hard drives for mirroring. Unless the protocol for conducting the previous mirroring exercises (including cost allocation) is not agreeable, the parties are ordered to meet, confer, and develop an acceptable method to conduct the examination and the date for accomplishing the same. In the event the parties are unsuccessful, they may approach the Court and the Court will then further consider a possible award of costs and fees to the prevailing party. In every other respect, Plaintiffs' Motion to Compel Discovery and for Sanctions - Teton Springs (Docket No. 377) is denied.

## ORDER

In accordance with the foregoing, it is HEREBY ordered as follows:

1. Defendants' Motion to Dismiss Punitive Damage Claims (Docket No. 283) is DENIED as moot;

2. Plaintiffs' Amended Motion for Leave to File third Amended Complaint (Docket No. 368) is DENIED;

3. Teton Springs' Motion to Quash Subpoenas and for Protective Order (Docket No. 300) is GRANTED in part and DENIED in part as follows:

   a. Teton Springs' Motion to Quash Subpoenas is DENIED; and

   b. Teton Springs' Motion for Protective Order is GRANTED;

4. All Seasons' Motion for Leave to File Supplemental Affidavit of Phillip J. Collaer (Docket No. 374) is GRANTED;

5. Teton Springs' Motion for Leave to File Supplemental Affidavit (Docket No. 376) is GRANTED;

6. Defendants' Motion to Strike Affidavit of Mark McLean (Docket No. 327) is DENIED;

**MEMORANDUM DECISION AND ORDER - 19**

7. Plaintiffs' Motion to Compel Discovery and for Sanctions - All Seasons (Docket No. 367) is GRANTED in part and DENIED in part as follows:

   a. Plaintiffs' Motion to Compel is GRANTED only insofar as All Seasons is ordered (if it has not already done so) to identify (1) the source of the "Axiom" email, and (2) all hard drives which may contain responsive documents in All Seasons' possession; in the event there are hard drives in existence that have not been examined for responsive documents, All Seasons is further ordered to search those hard drives and immediately produce any responsive documents no later than July 12, 2010; and

   b. Plaintiffs' Motion to Compel is DENIED in all other respects;

8. Plaintiffs' Motion to Compel Discovery and for Sanctions - Teton Springs (Docket No. 377) is GRANTED in part and DENIED in part as follows:

   a. Plaintiffs' Motion to Compel is GRANTED only insofar as Teton Springs is ordered to (1) identify all hard drives used by Mr. Vest in association with Teton Springs since January 1, 2004, and (2) produce those available hard drives for mirroring; and

   b. Plaintiffs' Motion to Compel is DENIED in all other respects.

**DATED: July 6, 2010**

*[signature]*

**Honorable Ronald E. Bush**
**U. S. Magistrate Judge**