IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT READ, et al., | Case No. CV08-099-E-EJL-REB |
| Plaintiffs, | |
| | Consolidated with |
| v. | Case No. CV08-288-E-EJL-REB |
| TETON SPRINGS GOLF & CASTING CLUB, LLC; et al., | |
| Defendants. | ORDER ADOPTING REPORT AND RECOMMENDATION |
| CHRIS HAMABE, et al., | |
| Plaintiffs, | |
| v. | |
| TETON SPRINGS GOLF & CASTING CLUB, LLC; et al., | |
| Defendants. | |

On February 16, 2011, United States Magistrate Judge Ronald E. Bush issued a Report and Recommendation ("Report"), recommending the Defendants' Motions for Summary Judgment be granted in part and denied in part. (Dkt. No. 520.) Any party may challenge a magistrate judge's proposed recommendation by filing written objections within ten days after being served with a copy of the report and recommendation. 28 U.S.C. §636(b)(1)(C). The district court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."

ORDER - 1

*Id.* The district court may accept, reject, or modify in whole or in part, the findings and recommendations made by the magistrate judge. *Id.*; *see also* Fed. R. Civ. P. 72(b).

Defendants All Season Resort Reality ("All Season") and Teton Springs Golf & Casting Club, LLC ("Teton Springs") filed objections to the Report and Recommendation issued in this case. All Season objects to the portions of the Report and Recommendation denying their Motion for Summary Judgment. (Dkt. No. 523). Likewise, Defendant Teton Springs joins in All Season's objections and argue their Motion for Summary Judgement should be granted in its entirety. (Dkt. No. 524). The parties have filed responses and the matter is now ripe for the Court's consideration. The Court has considered the contentions of the parties and conducted its de novo review of the record and finds as follows.

## Discussion

### I. Teton Springs Motion for Summary Judgment

The Report recommends granting Teton Springs' Motions for Summary Judgment on claims one, two, four, six, and seven and denied as to claims three, five, and eight. (Dkt. No. 520.) Teton Springs' objections focus on the Report's reasoning for denying the Motions as to claims three, five, and eight. (Dkt. No. 524.) Their objections contend there is no legal or factual basis to 1) hold Anthony Vest individually liable; 2) support both the ILSFDA anti-fraud and common law fraud claims; and 3) support the joint venture claims. (Dkt. No. 524, p. 2.) The Court will address each objection in turn below.

A.  **Liability of Anthony Vest**

In their objections, Teton Springs asserts Anthony Vest is not individually liable because 1) he is protected by the corporate veil, 2) NuWay was found to be Teton Springs' Agent, not his, and 3) the evidence shows Mr. Vest made no statements to Plaintiffs and instructed NuWay not to market the properties as investments. Plaintiffs respond that the argument regarding Mr. Vest's liability is improperly raised for the first time in the Teton Springs' objections. Regardless, Plaintiffs maintain Mr. Vest is: 1) personally liable under their ILSFDA Anti-Fraud Claim as he is a developer within the meaning of the Act; 2) not protected by the corporate veil; 3) personally liable for common-law fraud through his specific direction, participation, and knowing acquiescence in NuWay's fraud; and 4) personally liable on the Joint Venture Claim. (Dkt. No. 527, pp. 2-5.)

The Report does not speak specifically to Mr. Vest's liability as it was not raised before the Magistrate Judge in the briefing on the Motion. (Dkt. Nos. 520, 391, 409, 440, 460.)[1] Teton Springs' objection first takes issue with the fact that the Report "makes no

---

[1] Teton Springs' second Motion for Summary Judgment does argue Mr. Vest was only a minority shareholder in Headwaters with no control over the day-to-day affairs of Headwaters and, therefore, neither he nor Teton Springs were agents of Headwaters. (Dkt. No. 409, pp. 5-6.) This argument, however, was not nearly as focused as the one raised in Teton Springs' objection.

Some what closer to the point, in its second Motion for Summary Judgment, Teton Springs argues that neither Mr. Vest nor anyone at Teton Springs made any representations to or had any direct contact with Plaintiffs. (Dkt. No. 409, p. 8.) Plaintiffs' responses repeatedly argue Mr. Vest had ownership and control of Teton Springs as well as an agency relationship with NuWay. *See e.g.* (Dkt. No. 428, pp. 3, 4-5, 7, 16) (Dkt. No. 452, pp. 3, 4, 11, 12.) Teton Springs' reply states Mr. Vest's ownership of Teton Springs-related entities is "not material" to the anti-fraud claims. (Dkt. No. 440, pp. 9-10.)

(continued...)

distinction between Teton Springs Golf & Casting Club, LLC and Anthony Vest." (Dkt. No. 524, p. 2.) The Court finds no merit in this argument. In their own briefing, Teton Springs and Mr. Vest are collectively referred to as the "Teton Springs Defendants." (Dkt. No. 409, p. 2), (Dkt. No. 440, p. 1), (Dkt. No. 460, p. 2.)

The objection then claims Mr. Vest is protected by the corporate veil and that Mr. Vest did not have sufficient contacts with Plaintiffs and/or NuWay, as his agent, to substantiate the claims alleged by Plaintiffs. (Dkt. No. 534, p. 2-3.) Plaintiffs counter quoting *Aboujaoude v. Poinciana Development Co. II* which held that a corporate officer may be held liable under the ILSFDA. 509 F.Supp.2d 1266, 1276 (S.D. Fla. 2007) (citations omitted). (Dkt. No. 527, p. 3.) Plaintiffs also cite to *L.B. Industries, Inc. v. Smith*, for the proposition that corporate directors can be held individually liable for their corporation's fraud where they specifically directed, actively participated, or knowingly acquiesced in the fraud. 817 F.2d 69, 71 (9th Cir. 1987); (Dkt. No. 527, p. 4.) Resolution of these arguments is precluded by the factual disputes existing in this case at this time.

This Court has previously considered Mr. Vest's role in this case. (Dkt. No. 493.) In a prior Report and Recommendation, the Magistrate Judge, in discussing the applicability of the economic loss rule, characterized Mr. Vest as the "managing member of Teton Springs" (Dkt. No. 482.) This Court, in its review of the Report and Recommendation, denied

---

[1](...continued)
Such arguments did not pointedly raise the issue of Mr. Vest's particular liability or protections under the corporate veil; particularly in light of how the parties themselves grouped the "Teton Springs" defendants in their briefing.

ORDER - 4

Plaintiffs' efforts to hold Mr. Vest personally liable by way of his involvement with All Season. (Dkt. No. 493, pp. 6-8.) In doing so, however, the Court agreed that Mr. Vest was "the managing partner of Teton Springs" and "akin to Teton Springs." (Dkt. No. 493, p. 7.) Teton Springs has itself characterized Mr. Vest as a "managing member" of Teton Springs. (Dkt. No. 460, pp. 3, 8-10.) The scope of Mr. Vest's role, however, remains unclear. The facts surrounding the parties' varying levels of knowledge and participation in the activities giving rise to Plaintiffs' claims are unknown at this time. The Court finds Teton Springs' argument/objection in this regard to be lacking as they have failed to demonstrate the absence of disputed facts on this issue. In particular, the scope of Mr. Vest's activities, role, and involvement with the entities in this action as well as any contacts he had with Plaintiffs is undeterminable at this time as it is based upon the resolution of factual questions.

B.  **Fraud Claims**

Teton Springs objects to the Report arguing there is no legal or factual basis to support Plaintiffs' Fraud Claims because there is no evidence that either Teton Springs or NuWay were agents of or had any involvement with River's Edge's appraisals which make up the basis for the fraud claims. (Dkt. No. 524, p. 4.) Plaintiffs maintain they have produced evidence supporting their factual allegations of fraud and the connections between Teton Springs and the other Defendants. (Dkt. No. 527, p. 5-6.) Plaintiffs further assert their Fraud Claims are legally viable as they have provided evidence that Teton Springs was the developer and NuWay was its agent and/or Teton Springs knew, or should have known, of NuWay's fraudulent misrepresentations and ratified their conduct. (Dkt. No. 527, pp. 6-7.)

In analyzing the fraud claim, the Report considers the interplay between Teton Springs, NuWay, and River's Edge as well as the statements and representations made to Plaintiffs regarding the property.[2] In doing so, the Report states that it previously found that "NuWay was Teton Springs' agent with respect to marketing lots to Plaintiff" but was careful to point out that it had not determined, as a matter of law, that "Teton Springs was completely responsible for NuWay's conduct[.]" (Dkt. No. 520, p. 25) *quoting* (Dkt. No. 477, pp. 17-18.) "That issue, including Teton Springs' knowledge of NuWay's conduct/representations to Plaintiffs, remains left to the fact-finder's consideration." (Dkt. No. 520, p. 26.) Similarly, the Report concludes the issue of whether or not NuWay's alleged statements to Plaintiffs regarding "instant equity" and/or the appraisals themselves support a claim of fraud cannot be decided as a matter of law.

In their objection, Teton Springs points to the lack of any involvement by either it or NuWay with River's Edge's appraisals. (Dkt. No. 524, p. 4.) The appraisals done by River's Edge were allegedly inflated to reflect a greater property value than the actual values of the properties. However, the relationships between these Defendants in terms of their involvement and knowledge in the alleged scheme, turn on disputed questions of fact. Further, as the Report points out, the "lynchpin" of the fraud claim relates to NuWay's claims

---

[2] As to the ILSFDA's Anti-Fraud provisions, the Report disagreed with Teton Springs' argument that the lot sale contracts' merger clause precludes any claims by Plaintiffs based on allegedly fraudulent representations made outside of the contract. (Dkt. No. 520, p. 14.) The Report concluded that Plaintiffs were not precluded, as a matter of law, from relying upon representations made outside of the lot sale contracts as a basis for their fraud claims. (Dkt. No. 520, p. 16.) Teton Springs does not object to this portion of the Report.

of "instant equity." (Dkt. No. 520, p. 26.) The Court finds there is evidence pointing to a connection between Teton Springs and NuWay sufficient to overcome the Motion for Summary Judgment as to the fraud claim.

### C. Joint Venture Claims

Teton Springs' second Motion for Summary Judgment seeks dismissal of Plaintiffs' Joint Venture Claim. (Dkt. No. 409.) Teton Springs' objection to the Report's recommendation denying the Motion on this claim argues Plaintiffs' Joint Venture Claims should be dismissed as they lack a 1) legal basis because there is no evidence of any agreement or shared profits between Teton Springs and/or NuWay with Eagle River or River's Edge and 2) a factual basis because there is no evidence of any relationship or involvement by Teton Springs with the appraisals. (Dkt. No. 524, pp. 6-7.) Plaintiffs counter arguing the Report properly concluded Plaintiffs had offered sufficient evidence raising questions of fact on the issue; in particular, questions of fact exist as to whether or not a joint venture existed. (Dkt. No. 527, p. 8-9.)

In recommending denial of the Joint Venture Claim, the Report, referencing its discussion of the same claim as to All Season, maintains the involvement of all the parties, including Plaintiffs, is "not easily defined, requiring many inferences to be assumed many different ways. In this setting, a dismissal...on summary judgment is inappropriate." (Dkt. No. 520, p. 33.) In doing so, the Report characterizes Teton Springs' involvement as "more pronounced" than All Seasons and concludes NuWay was Teton Springs' agent and that Teton Springs had some relationship with Eagle River. (Dkt. No. 520, p. 33.) As such, the

Report concludes that, for the same reasons discussed as to All Season, the Motion should be denied.

This Court has reviewed the particular materials referenced in Teton Springs' objections on this claim as well as the initial briefing and materials presented on the Motion. Having done so, this Court is in agreement with the Magistrate Judge's conclusion that genuine issues of material fact exist surrounding the Joint Venture Claim. The Court's own review of the record reveals that the relationships and levels of involvement attributable to the parties here, if any, are questions turning on disputed facts. The interplay between the parties on both sides is simply something that cannot be determined as a matter of law at this time. As such, the Court will deny the Motion on this claim.

## II.     All Season's Motion for Summary Judgment

The Report recommends granting All Season's Motion for Summary Judgment on claims two, six, and seven and denied as to claims three and eight. (Dkt. No. 520.) All Season's objections focus on the reasoning for denying the Motion as to claims three and eight arguing: 1) there is no proximate cause between All Season's actions and Plaintiffs alleged injuries and 2) the lack of evidence of any knowledge or connection between All Season and the other Defendants allegedly involved in either the fraud or joint venture. (Dkt. No. 523.)

### A.     Proximate Cause

All Season objects to the Report arguing it fails to take into account the Plaintiffs' fraudulent misrepresentations of their income and/or intended use of the homes in their loan

applications which would have made them unqualified for the financing used to purchase the properties. (Dkt. No. 523, p. 2.) Their objection argues the Report "misapplies the summary judgment standard" by failing to shift the burden to Plaintiffs and, instead, requiring All Seasons to establish the Plaintiffs could not have purchased the property without engaging in loan fraud. (Dkt. No. 523, pp. 3-6.) All Seasons argues the burden should be on Plaintiffs to show they could have financed their property purchases without engaging in loan fraud. Because they have not done so, All Season asserts, the Plaintiffs' admitted fraud on the loan applications "severs any causal connection between the actions of the defendants and the damages they seek...." (Dkt. No. 523, p. 6.)

Plaintiffs counter that the Report properly determined the proximate cause issue to be a factual determination for the jury and that questions of fact exist precluding summary judgment. (Dkt. No. 528, p. 6.) In particular, Plaintiffs responds that All Season did not carry its initial burden on summary judgment to show the non-existence of any issue of material fact on the questions surrounding the loan applications and, regardless, Plaintiffs have refuted the Motion pointing to a "wealth" of materials evidencing several factual questions that exist regarding proximate causation in this case. (Dkt. No. 528, p. 6.) The evidence relied upon by All Season, Plaintiffs assert, does not establish anything with regard to Plaintiffs' financing in terms of who was responsible for the falsified information, Plaintiffs or Eagle River, and whether or not the Plaintiffs would have obtained the financing using accurate financial information. (Dkt. No. 528, pp. 2-3.) Further, the "method of obtaining financing does not defeat causation," Plaintiffs argue, because regardless of where they got their

financing the fact remains the Defendants were paid and had caused damages to Plaintiffs for which Plaintiffs should recover. (Dkt. No. 528, p. 3.)

The Report concluded the proximate cause issue was a factual one to be resolved by the jury, particularly given "the injuries may be the result of multiple proximate causes...." (Dkt. No. 520, p. 18.) In arriving at this recommendation, the Magistrate Judge considered the various possible proximate causes of Plaintiffs' alleged injuries as well as All Season's argument that Plaintiffs' own conduct in supplying inaccurate information on their loan applications was the proximate cause of their injuries. (Dkt. No. 520, pp. 17-18.) This Court has reviewed the parties' arguments in their initial briefing and objections as well as the particular materials cited to regarding this issue and, having done so, agrees with the Magistrate Judge that genuine issues of material fact exist on the proximate cause question. Moreover, the Court finds the Magistrate Judge did not improperly shift the burden on summary judgment. Though All Season believes otherwise, whether or not Plaintiffs would have obtained financing to purchase the subject properties had they submitted truthful information is disputed in the record. Moreover, the parties' arguments and submissions themselves make it abundantly clear that factual questions exist on the proximate cause issue such as: factual questions exist as to whether Plaintiffs could have obtained funding, the causes, if any, of Plaintiffs' alleged injuries, and the degree in which each cause and/or party contributed to any such injuries. (Dkt. Nos. 523, 528.) These factual determinations lie within the province of the jury to decide. Accordingly, the Court agrees with the Report on this issue and will adopt the same.

### B. ILSFDA Fraud Claims

All Season next objects to the Report's conclusion on the Fraud Claims arguing there is no evidence of any communications between the Plaintiffs and All Season or the developer. The alleged fraud, All Season argues, stems from communications Plaintiffs received from NuWay. (Dkt. No. 523, pp. 6-7.) All Season asserts NuWay was not its agent and, regardless, the fraud cannot be imputed from NuWay to All Season. (Dkt. No. 523, p. 7.) Instead, All Season argues, each individual Plaintiff is required to show All Season communicated a false fact to each of them prior to their signing of the lot contracts. Further, All Season argues Plaintiffs fail to show the fraud was communicated via interstate commerce; pointing in particular to Plaintiff Paul Maples allegation that the fraud occurred during a face-to-face meeting. (Dkt. No. 523, pp. 8-9.) Plaintiffs respond arguing the interstate commerce issue is raised for the first time in All Season's objections. Regardless, Plaintiffs argue all that is required is that the Defendants utilized instrumentalities of interstate commerce which there is evidence of in this case; pointing to All Season's travel across state lines to pitch the investments to Plaintiffs as well as meet with other Defendants. (Dkt. No. 528, p. 7.)

The Report applied its discussion of the ILSFDA Claims as to Teton Springs' Motion to its ruling on the claims as to All Season; recommending the Motion be denied. (Dkt. No. 520, p. 17.) Much of All Season's objection challenges the lack of "any evidence describing communications between the individual plaintiffs the [All Season] defendants or, the developer, [Teton Springs]." (Dkt. No. 523, p. 6.) All Season argues because liability for

ORDER - 11

fraud cannot be based on imputed fault of an agent or employee, any representations made by NuWay, as Teton Springs' agent, cannot be used to support a fraud claim against All Season. (Dkt. No. 523, p. 7.) In support of its argument, All Season cites to *Podolan v. Idaho Legal Aid Serv., Inc.*, 854 P.2d 280, 290 (Idaho 1993) where the Idaho Court of Appeals held that the tort of fraud requires intent to commit the tort.[3] In that case, an attorney employed by the defendant Legal Aid Society was hired by plaintiffs to represent them outside the structure of his employment with the Legal Aid Society. Plaintiffs' claim they suffered losses as a result of their attorney's malpractice and sued the Legal Aid Society to recover their damages. *Id.* The Idaho Court of Appeals found the liability of the employee could not be imputed on the defendant employer because there was no evidence defendant intended to defraud the plaintiffs.

Plaintiffs counter that All Season's objection confuses their claims under the ILSFDA Anti-Fraud provisions and their common-law fraud claim. The citation to Idaho law, they argue, has no bearing on their ILSFDA Anti-Fraud Claim. (Dkt. No. 528, p. 6.) The Court agrees. While the Idaho law may be relevant to a common law claim of fraud, All Season was not named in the common law fraud claim. (Dkt. No. 219, p. 29 ¶ E.)[4] As such, the references to Idaho law do not appear to be relevant to the ILSFDA Anti-Fraud Claim as alleged against All Season in the Second Amended Complaint. (Dkt. No. 219, p. 26 ¶ C.)

---

[3] All Season also cites to Idaho Code § 54-2084, 2093, 2094 to support their argument that NuWay could not have been its agent in the absence of a written agreement. (Dkt. No. 523, p. 7.)

[4] The Report appropriately addressed the common-law fraud claim as to Teton Springs' second Motion for Summary Judgment. (Dkt. NO. 520, pp. 25-28.)

As to the ILSFDA, All Season argues Plaintiffs have not shown any false communications were made by All Season utilizing interstate commerce; arguing the single face to face meeting with one Plaintiff is insufficient. (Dkt. No. 523, pp. 8-10.) The Report acknowledged that during oral argument, counsel for All Season mentioned the fact that only two Plaintiffs, Paul Maples and Gentry Gardner, had contact with All Season by way of a face-to-face meeting. (Dkt. No. 520, p. 17, n. 10.) This "discrete issue" the Report notes, was not briefed by the parties nor fully argued at the hearing. (Dkt. No. 520, p. 17, n. 10.) Regardless, Plaintiffs have responded by pointing to evidence in the record to support their claim that Defendants employed instrumentalities of interstate commerce when they allegedly violated the ILSFDA. (Dkt. No. 528, p. 7.)

The ILSFDA "imposes detailed disclosure requirements upon land developers and prohibits fraud in interstate land transactions." *Armbrister v. Roland Int'l Corp.*, 667 F.Supp. 802, 811 (M.D. Fla. 1987). Violations of the Act must involve some interstate nexus whereby the defendant developer or agent made use of instrumentalities of interstate commerce when engaging in conduct violating the provisions of § 1703. *See* 15 U.S.C. § 1703(a) ("[i]t shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails...."). The Second Amended Complaint here alleges: "Defendants violated 15 U.S.C. § 1703(a)(A), (B) and (C) by using a pattern of interstate communications to sell Lots through the use of a scheme or device which misrepresented the Subdivision...." (Dkt. No. 219, p. 26, ¶ 6.38.) In their response to the objections, Plaintiffs have pointed to various interstate

communications between All Season, NuWay, Mr. Vest, and Plaintiffs. (Dkt. No. 528, p. 7.) For example, an April 3, 2006 email from All Season's Sarah Anderson to Plaintiff Chris Frye, across state lines, contained an attachment of a Lot Sale Contract with instructions that he sign it and fax it back. (Dkt. No. 528, p. 7, n. 28), (Dkt. No. 427, p. 12.) Plaintiffs further point to activities by the Defendant entities, incorporated in three different states, in traveling across state lines to meet with other Defendants to discuss and agree on their fraudulent marketing scheme employed in this case. (Dkt. No. 528, p. 7.) Such allegations, they argue, apply to all Plaintiffs. The Court finds the Plaintiffs have shown disputed issues of fact exist on this claim which preclude summary judgment.

### C. Joint Venture Claims

All Season describes the joint venture alleged here to include an agreement between the Defendants to corrupt the appraisal process so as to allow NuWay to market the properties with inflated values, corrupt the lending process by providing false financial and intended use information in the loan applications, and promising profits to investors like the Plaintiffs which were never realized. (Dkt. No. 523, pp. 11-12.) In their objection, All Season asserts the Report fails to address whether Plaintiffs carried their burden of proof on each of the five elements of the Joint Venture Claim. All Seasons argues there is no evidence of any agreement between the parties to carry out such a scheme, they had no involvement in the appraisal or loan application processes, nor did they have any knowledge of those processes. (Dkt. No. 523, pp. 12-13.) Moreover, All Season disputes that it had any knowledge of such matters, shared in profits or losses of the enterprise, and no right of mutual control or

ORDER - 14

management of the enterprise. (Dkt. No. 523, pp. 14-17.) Finally, All Season argues the joint venture as alleged by the Plaintiffs is illegal and, therefore, as a matter of law, unenforceable. (Dkt. No. 523, p. 18.)

In response, the Plaintiffs argue their Joint Venture Claim is based on both common law and the Idaho Brokerage Representation Act.[5] (Dkt. No. 528, p. 8.) Plaintiffs maintain, the Report properly found that they have supplied evidence of All Season's involvement in the alleged scheme sufficient to overcome summary judgment. In particular, Plaintiffs cite to evidence that All Season had knowledge of, involvement in, and shared in the profits of the venture. (Dkt. No. 528, pp. 9-10.) Moreover, the illegal joint venture argument, Plaintiffs argue, does not apply here as this is not a contract based claim but, instead, one of vicarious liability. (Dkt. No. 528, p. 10.)

The Report concluded that factual issues exist on the question of whether and to what extent, if at all, "All Seasons contributed to the alleged joint venture to improperly market and sell the Subdivision's lots." (Dkt. No. 520, p. 22-23.) This Court agrees. Put simply, questions of fact exist that preclude any ruling as a matter of law that All Season was not engaged in a joint venture as alleged by Plaintiffs. Though All Season argues it had no involvement or knowledge in the conduct allegedly making up the joint venture, Plaintiffs have responded with evidence indicating otherwise in the form of deposition testimony regarding All Season's involvement and/or knowledge in the marketing decisions for the

---

[5] Plaintiffs also incorporate their Joint Venture Claim arguments made in their response to Teton Springs' objections. (Dkt. No. 528, p. 8.) *see* (Dkt. No. 527, p. 8.)

properties. *See* (Dkt. No. 453, p. 20) and (Dkt. No. 388, Depo. Bramlette, p. 179.) As to All Season's argument that the Report failed to analyze whether Plaintiffs carried their burden of proof on each of the five elements of the Joint Venture Claim, this Court disagrees. The moving party on summary judgment has the initial burden of showing the absence of any genuine issue of material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). All Seasons has not done so here. The question of whether or not All Seasons engaged in the joint venture alleged in this case turns on disputed facts which the jury must resolve. What All Seasons knew and did in terms of the marketing and sale of the subject properties involves the resolution of genuine issues of material fact.

The Report also considered All Season's alternate argument that Plaintiffs' own conduct creates an illegal joint venture that is unenforceable. (Dkt. No. 520, p. 23 n. 15.) In so doing, the Magistrate Judge rejected the argument as it turns, yet again, on disputed factual issues. This Court agrees. The scope of the parties' involvement in the marketing, financing, purchasing, and selling of the subject properties involves genuine issues of material fact precluding a determination as a matter of law as to whether a joint venture or even an illegal joint venture existed in this case.

**ORDER**

Having conducted a *de novo* review of the Report and Recommendation, this Court finds that Magistrate Judge Bush's Report and Recommendation is well founded in law and consistent with this Court's own view of the evidence in the record. Acting on the recommendation of Magistrate Judge Bush, and this Court being fully advised in the

premises, **IT IS HEREBY ORDERED** that the Report and Recommendation entered on February 16, 2010, (Dkt. No. 520), should be, and is hereby, **INCORPORATED** by reference and **ADOPTED** in its entirety.

**THEREFORE, IT IS HEREBY ORDERED** as follows:

1) Defendants' Teton Sprigs' Motion for Partial Summary Judgment (Dkt. No. 383) is **GRANTED IN PART AND DENIED IN PART**.

    a) The Motion is granted as to the Plaintiffs' First and Second Causes of Action which are **DISMISSED**.

    b) The Motion is denied as to Plaintiffs' Third Cause of Action.

2) Defendants' All Seasons' Motion for Partial Summary Judgment (Dkt. No. 394) is **GRANTED IN PART AND DENIED IN PART**.

    a) The Motion is granted as to the Plaintiffs' Second, Sixth, and Seventh Causes of Action which are **DISMISSED**.

    b) The Motion is denied as to Plaintiffs' Third and Eighth Causes of Action and on the issue of proximate cause.

3) Defendant Teton Springs' Motion for Partial Summary Judgment (Dkt. No. 409) is **GRANTED IN PART AND DENIED IN PART**.

    a) The Motion is granted as to the Plaintiffs' Fourth, Sixth, and Seventh Causes of Action which are **DISMISSED**.

    b) The Motion is denied as to Plaintiffs' Fifth and Eighth Causes of Action.

4) Defendant Thomas A. Sarty's Motion for Partial Summary Judgment (Dkt. No. 403) is **DENIED AS MOOT** in light of the Court's Order of Dismissal (Dkt. NO. 514).

DATED: **March 28, 2011**

Honorable Edward J. Lodge
U. S. District Judge